Staples, J.,
delivered the opinion of the court.
The subject of controversy in this case is an ante-nuptial settlement made by John H. Wickham upon Maria F. Kersey and her children on the 23d of February, 18C8. At that time Mr. Wickham was indebted to a very large amount, far beyond his means of payment, and his object in making the settlement, it is claimed, was to defraud his creditors. If Mr. Wickham was alone concerned, there would be little difficulty in declaring the settlement void as to his creditors; but he is not the only one; the parties chiefly interested are the wife and children, for whose benefit the settlement was professedly made. The first section of chapter 114, Code of 1873, which is but a continuation of an old statute, after declaring that conveyances made with intent to hinder, delay, or defraud creditors, shall be void, “further declares, that this section shall not affect the title of a purchaser for valuable consideration, unless it appears that he has notice of the fraudulent intent of his immediate *grantor, or of fraud rendering void the title of-such grantor.” Conveyances for a valuable consideration without notice of the fraud by the person receiving the conveyance are valid at common law, and as is here seen, are expressly excepted out of the operation of the statute. So that if the grantee be a bona fide purchaser for a valuable consideration, his or her title is unassailable, whatever may have been the motives or intentions of the grantor in executing the deed. It is absolutely essential that both parties shall concur in the fraud.
If it be conceded, therefore, that Mr. Wickham’s intention in making the settlement was to avoid payment of his debts, the question still arises, Did Maria F. Ker-sey (now Mrs. Wickham) have notice of that intention? Upon a very careful examination of this record, I think that question must be answered in the negative, or perhaps, to speak more accurately, jthe evidence is insufficient to establish the notice. It must be remembered that in cases like the present, the courts can not act upon mere suspicion or presumption. Fraud must be proved — proved by clear and satisfactory testimony. This is the well established rule, universally recognized by the courts, and scarcely needs a citation of authority to support it.
There is no evidence, literally none, to show that Mrs. Wickham, at the time of the settlement, was apprised that Mr. Wickham was in embarrassed circumstances, or even that he was indebted to any one. A witness was introduced who stated that he advised Mr. Wickham to go into bankruptcy, and the latter replied he could come through without it. It is not proved that Mrs. Wickham heard this conversation, of if she did that she understood its purport. And this is the only evidence to establish the notice, unless we are to presume from the intimacy of the parties that Mr. Wickham informed her of his indebtedness, or that his purpose in making the settlement *and in entering into the marriage was to secure his property from the claims of creditors. There is, perhaps, no subject upon which men are more reticent even with their families and intimate friends, than that which relates to their business transactions, and especially their pecuniary-liabilities. Under all these circumstances it is hardly to be presumed that Mr. Wick-ham was more communicative in the present case. At all events there is no proof of the fact.
Mr. Wickham’s closest neighbors considered him a wealthy man, the wealthiest in the community. Some of them thought him a money-lender. He was the owner of two valuable farms in Hanover, one containing 700 or 800 acres, and the other 1,300 acres, upon which he resided. It is very true they were subject to encumbrances to a large amount, but there is not the least reason to suppose that Mrs. Wickham knew it. The deed of settlement did not embrace *557 all of Mr. Wickham’s estate, but certain specific property, consisting of bonds upon various persons and an interest in land in Missouri. If Mrs. Wickham believed, as the neighbors believed, that her intended husband was a man of large fortune — if she knew he owned the farms, without knowing of the encumbrances — she might well regard the settlement as just and reasonable, and without injury to any one. It is said by an eminent American author, that, although one American case seems to intimate that a mere knowledge of the insolvency of the intended husband by the intended wife would make a settlement by him on her valid as against her creditors, this appears to be contrary to the English doctrine, and perhaps it is contrary to the true doctrine everywhere. Perhaps a woman may lawfully give her hand in marriage for money which she knows the party cannot pay without withholding from them to whom he had, for a valuable *consideration, previously promised it. 1 Bishop on the Laws of Married Women.
Whether this be or not the true rule, it is certainly well established that the fact of the husband’s being indebted at the time, and that the woman knew him to be so, will not invalidate the transaction in favor of creditors. 3 Lomax’s Digest, 434. If, therefore, it appeared in this case that Mrs. Wickham was aware at the time of her intended husband’s indebtedness, that would not of itself be sufficient to invalidate the settlement, unless she was aware of it to an extent to justify the belief of a design on his part to avoid the payment of his debts.
Assuming, then, that she acted bona fide, is the settlement valid against creditors? This inquiry involves several important propositions now to be considered.
In the first place, that marriage is a valuable consideration, sufficient to support a conveyance of property even against creditors, is firmly established by a long train of decisions, English and American. The wife in such case is deemed to be a purchaser of the property settled on her in consideration of the marriage, and she is entitled to hold it against all the world. Lord Coke gives a forcible illustration of the rule. It being the general doctrine that the word “heirs” is necessary in a deed to pass a fee, if (he says) “a man had given land to a man with his daughter in frank marriage, generally a fee simple had passed without this word ‘heirs,’ for there is no consideration so much respected in law as the consideration of marriage in respect of alliance and posterity.” 1 Bishop on the Law of Married Women, § 755. In Barrow v. Barrow, 2 Dickens R. 504, Lord Chancellor said “he never knew an instance where a settlement in consideration of marriage had been set aside, and he would not make a precedent.” In Campion v. Cotton, 17 *Ves. R. 364, 367, Sir Samuel Romily and William Bell, counsel for the defendants, said: “There is no decision to be found in which a settlement previous to and in contemplation of marriage has been considered as fraudulent against creditors. That a case strong enough for that purpose might exist cannot be denied, as if the wife was clearly a party and the marriage a more secure mode of defrauding creditors; but no such decision has yet been made. See also Nairn v. Prowse, 6 Ves. R. 753; Tunno v. Trezevant, 3 Des. R. 264. There are modern English decisions which have pronounced such settlements void as to creditors; not, however, because they included all the husband’s property, or because he was utterly insolvent, but on the ground that the wife appeared to be a party to the fraud of the husband. Ex parte Mc-Burnie’s Trustees, 1 DeG., M. & G. 440; Fraser v. Thompson, 4 DeG. & Jones, 659. The learned counsel quotes an observation of Mr. Justice Nott, of South Carolina, that the English decisions on this subject ought to be received with great caution; that there marriage settlements are usually among the higher or wealthier classes of society, with whom the marriage contract is in the nature of a bargain and sale, usually carried on by parents and guardians to promote family pride and influence.
No country in the world can, perhaps, boast of a purer judiciary than that from which we have derived our laws, institutions, and the most valued portions of our jurisprudence. It is not to be supposed that eminent judges there would lend the sanction of their names to mere family schemes in fraud of creditors upon such considerations as those suggested by the learned judge. The decisions respecting marriage and marriage contracts, I imagine, rest upon higher ground. Lord Robertson, a Scotch judge, in the case of Levelt, Ferg. R. 385, 389, *397, uses this language: “Marriage is a contract sui generis, and differing in some respects from all other contracts; so that the rules of law which are applicable in expounding and enforcing other contracts may not apply to this. The contract of marriage is the most important of all human transactions; it is the very basis of the whole fabric of civilized society. The status of marriage is juris gentium, and the foundation of it, like that of all other contracts, rests on the consent of the parties; but it differs from other contracts in this, that the rights, obligations or duties arising from it are not left entirely to be regulated by the agreement of the parties, but are to a certain extent matters of municipal regulation over which the parties have no control by any declaration of their will. It confers the status of legitimacy on children born in wedlock, ywith all the consequential rights, duties and privileges thence arising. It gives rise to the relations of consanguinity and affinity. In short, it pervades the whole system of civil society. Unlike other contracts, it cannot in general, in any civilized country, be dissolved by mutual consent; and it subsists in full force, even *558 though one of the parties should forever be rendered incapable as in the case of incurable insanity, or the like, from performing his part of the marital contract. No'wonder that the rights, duties and obligations arising from so' important a contract should not be left to the discretion or caprice of the contracting parties, but should be regulated in many important particulars by the law of every civilized country.” .See on this subject the various decisions cited in Tyler on Coverture and Infancy, pages 804 to 811.
It is upon some such considerations as these, I take it, and not those suggested in this case, the courts everywhere have based their decisions in respect of marriages and contracts in consideration of marriage. And accordingly *the American decisions have followed the English, adopting the language and affirming in the broadest terms the doctrines of the judges. Magniac & Co. v. Thompson, decided by Mr. Justice Baldwin, and reported in 1 Baldwin R. ’344; and again decided upon an appeal to the supreme court of the United States, 7 Peters, p. 367, is a familiar case much relied on in the argument here. Mr. Justice Story delivering the opinion of the whole court, said: “Nothing can be clearer, both upon principle and authority, than the doctrine, that to make an ante-nuptial settlement void as a fraud upon creditors, it is necessary that both parties should concur in or have cognizance of the intended fraud. If the settler alone intended a fraud, and the other party have no notice of it, she is not and cannot be affected by it. Marriage in contemplation of the law is not only a valuable consideration to support such a settlement, but a consideration of the highest value, and from motives of the soundest policy is upheld with a steady resolution. The husband and wife, parties to such a contract, are therefore deemed, in the highest sense, purchasers for a valuable consideration, and so that it is bona fide without notice of fraud brought home to both sides, it becomes unimpeachable by creditors.
In Sterry v. Arden, 1 John. Ch. R., p. 360, 371,. Chancellor Kent said: “The marriage was a valuable consideration which fixed the interest in the grantee against all the world, and as much as if she had then paid an adequate pecuniary consideration. It is the constant language of the books and of the courts, that a voluntary deed is made good by a subsequent marriage, and a marriage has always been held to be the highest consideration in law.” See Verplank v. Sterry, 13 John. R. 536; where this decision was affirmed. The cases of Smith v. Allen, 5 Allen. R. 454; Jones’ Appeal, 62 Penn. St. R. *324; Bunnel v. Witherow, 29 Ind. R. 123; Armfield v. Arm-field, Freeman Ch. R. 311; Andrews & Bros. v. Jones, 10 Alab. R. 400; are to the same effect. See also 3 Minor’s Inst. 690, 708; 1 Amer. Lead. Cases, 54, 55; Bump on Fraudulent Conveyances.
The Virginia" cases are equally emphatic upon this subject, none perhaps more so than Huston’s adm’r v. Cantril, 11 Leigh. 136, 155. It was there held that a voluntary conveyance made by a man greatly indebted to his daughter, is rendered good and available against creditors of the grantor upon the subsequent marriage of the daughter, who thereupon. was to be regarded a purchaser by relation for a valuable consideration. Judge Carr, in speaking of the deeds made to the daughter, observed: “Will it be said that, if at the date of the deeds (Clendenin) the father had sold bona fide and' for a valuable consideration, every slave he had, Houston, the creditor, could have disturbed such sale? And what is a settlement of slaves or other property upon a child in consideration of marriage, but a sale for a valuable consideration? ' Is not marriage the highest consideration, the most favored? I have always seen it so laid down.” Upon this question there was no difference of opinion among the judges. Judge Stanard did not concur with the majority, but this dissent was based upon other grounds. In Bentley v. Harris’ adm’r, 2 Gratt. 357, the decision in Huston’s adm’r v. Cantril, was cited and followed. See also Eppes v. Randolph, 2 Call 103; Welles v. Cole, 6 Gratt. 645; Fones v. Rice, 9 Gratt. 568.
After these emphatic avowals, it is, I think, too late to caution us how we follow the English cases. In the principles declared, the American courts have gone quite as far as those of England.
The learned counsel tell us, that marriage, however valuable as a consideration, cannot sustain a settlement *by a man of his whole estate who -is greatly indebted at the time, and that no case can be found, certainly none in this country, to upheld such a settlement. The learned counsel in all their researches have found but one case which holds that a settlement of that character is per se fraudulent and void as to creditors. I allude to the case of Simpson' & Davidson v. Admiral Graves and others, decided by the court of appeals of South Carolina, then consisting of three judges, the opinion being delivered by Mr. Justice Nott; Riley’s Ch. Appeal Cases, 232. The settlement in that case embraced a landed estate estimated at $400,000, and 300 slaves of the value of $150,-000, including not only the entire property of the husband, but that of his father also, amounting in the aggregate to more than a half million of dollars — an estate at that time, as was said by the learned judge, equalled by very few in this country. All this was settled upon the intended wife, who had besides an ample fortune., of her own. Mr. Justice Nott might well say: “Even though marriage may be a part of the consideration, fraud may be 'mingled with it, and that may as well be inferred from internal evidence as from circumstances aliunde.” It will be conceded there may be settlements so manifestly unreasonable, so excessive as to shock the moral sense, and carry on their face conclusive *559 evidence of fraud in all the parties concerned. The South Carolina case is one of them, and no one will find fault with Mr. Justice Nott’s decision in that particular. But when he lays down, as a rule of law, “that when the settlement includes the whole of the settler’s property, that fact shall be considered of itself as conclusive evidence of fraud upon creditors,” he affirms what is not supported by authority and is unsound in principle. I can imagine a case in which such a settlement would not necessarily be fraudulently designed by the husband. But ^conceding that it is so, does it follow that the intended wife is a particeps delicti? Suppose she knows nothing, as is generally the’ case, of the indebtedness of the man she is about to marry — -suppose that the deed, as in the present case, does not show that it includes all the settler’s estate, and that she has no reason to suppose it is all — how is her title affected? She is a purchaser for valuable consideration, the very highest in law, and by the express terms of the statute and by the common law, she is protected, unless it appear that she had notice of the fraud of the grantor.
A man possessed of a small patrimony, in contemplation of a marriage with a lady accustomed to the luxuries and refinements of life, may settle his entire estate upon her and the issue of the marriage. This might be very unjust to his creditors, and yet no more than a just and reasonable provision for her, such as she would have the right to expect, and her friends to require. What principle of law, what decision, except that of Mr. Justice Nott, pronounces such a settlement per se fraudulent? In some cases the half of a man’s fortune would be an extravagant settlement; in others the whole would be very inadequate. It is very difficult to perceive any difference in principle between a settlement of one-half or two-thirds of a man’s fortune on his intended. wife, to the injury of his creditors, and the settlement of the whole to the injury of his creditors only to a greater extent. It is simply a question of degree. And yet the books are full of cases in which settlements made by men in insolvent circumstances have been sustained. These considerations will serve to show that no such test can be relied on as that suggested by Mr. Justice Nott. Bishop, in his work on the Laws of Married Women, vol.. 1, sec. 784, thus states the conclusion to which he has arrived upon a survey of all the authorities: “If a man, wishing to enter *into matrimony with a. particular woman, should, being insolvent, convey to her all his property, which was accepted by her with full knowledge of the facts, the mutual intent being not to defraud creditors as a primary object, but to contract marriage, each on such terms as could reasonably be procured from the other, the case would not be within either of the statutes of "Elizabeth; neither would it be in violation of any principle of the common law, because the common law, though it abhors every sort of cheating, loves matrimony. Its principles all point to it whenever the circumstances of the case expose them to this attractive force.” These observations are quoted, not because they are approved in all their latitude, but because they show the conclusion of a distinguished author upon a thorough examination of the cases. See also Croft v. Townsend’s adm’r, 3 Des. R. 223.
There is another difficulty attending this doctrine laid down in the South Carolina case. Suppose we say the settlement is fraudulent whenever it includes the whole of the husband’s estate, and yet we are satisfied the wife is innocent of all fraud, what is to be done with the settlement? Is it to be set aside in toto? Is she to be deprived of all benefit under the settlement because the husband has deceived her in attempting to defraud his creditors? What is to become of the provision for children of the marriage? The counsel, I think, will agree that the idea of annulling the settlement in toto in such case could not be entertained. If not, how is it to be reformed? Adverting for a moment to this status (this relation of marriage), upon what basis is the calculation to be made by which the compensation is to be adjusted?
1 am not now speaking of the present case, but of a principle or general rule to be adopted by the courts under which an account may be taken to determine in dollars and cents the value of the wife, what ought to ^maintain her comfortably, and support and educate her unborn children. These difficulties are immeasurably increased when it is considered that the court is interfering with the vested rights of a purchaser for valuable consideration, and in depriving her of the property for which she has paid the highest consideration; it can never restore her to her former position. No case has been found in which a court has attempted to interfere with a settlement in that way. A little reflection will satisfy any one that when we attempt to establish new tests, when we seek to interfere with these settlements upon any other grounds than those mentioned in the statute, for fraud, both parties concurring, we involve ourselves in endless embarrassments. If injustice is done creditors by the law, as it is now universally recognized, the remedy is in the legislature and not in the courts. The state of North Carolina has a statute authorizing the reformation of marriage settlement upon certain principles there prescribed, which might be adopted in Virginia and other states. Until the legislature interferes, however much a man may be indebted, an ante-nuptial settlement made by him is good against his creditors, unless it appear on the face of the deed, or by evidence aliunde, that the intended wife was recog-nizant of the fraud. The extravagance of the provision might of itself be sufficient to put her upon inquiry and convict her of notice, because that which is conveyed is utterly disproportionate to the circum *560 stances, conditions and all the surroundings of the parties. In the case before-us'the deed of settlement does not profess to include all the property of Mr. Wickham. It is very true, as already stated, the property left out is heavily encumbered, but that circumstance could not affect Mrs. Wickham unless it appeared she was aware of the incumbrances. The deed embraces bonds to the nominal amount of $58,000 or-$60,-000, but it is conceded they will *not realize more than one-third of that amount. The settlement may be grossly unjust to creditors, but it is certainly not so excessive as to warrant the courts in setting it aside on that ground, or on the ground of mutual'fraud.' •
The counsel for the appellants have argued further, that the principles governing an ante-nuptial contract have no just application to a case like the present, where the parties, long previous to the marriage, lived in illicit intercourse. I think the case of Coutts v. Greenhow is a complete answer to this objection. In that case it appeared that the husband made a marriage settlement of his whole estate, except what was covered by a mortgage, upon a woman with whom he had long lived in a state of fornication, and by whom he had several children. The conveyance was to the use of himself and the intended wife, and for their children. Upon a bill by the creditors of the husband, impeaching the settlement for fraud, Chancellor Taylor was of opinion that marriage is a good consideration where there is any personal inducement to it; but where there is not, it should not of itself be deemed a good consideration against creditors, and more especially where the parties lived m open violation of the laws, and to the evil example of the whole community. He declared it would be monstrous to say that Coutts, who was really an old man, far beyond the prime of his life, after so many years spent in a state of fornication, should be allowed to avoid the payment of his debts by entering into a marriage contract with her. See Greenhow v. Coutts, 4 Hen. & Mun. 485. It will be seen that the grounds upon which the chancellor relied in that case are substantially, almost identically, the same as counsel urge in this case. Upon an appeal to this court the decision was unanimously reversed, as reported in 2 Munf. 363.
Judge Cabell said the chancellor, in declaring the settlement void, must have gone on the idea that the cohabitation *of the parties before marriage will take the case out of the general rule. This is the first time, so far as I have observed, that this exception has been contended for, either in this country or in England. Supported neither by reason nor authority, it cannot be admitted. I shall not be the apologist of the conduct of the parties. They have, however, legitimated the innocent offspring of their criminal intercourse, and have made to society all the atonement in their power, and I am unable to perceive any reason in justification of marriage settlements generally, which does not apply in this particular case. If the consideration of the marriage be valid as to the parties to the marriage, it will undoubtedly be so as to the issue of the marriage, for there has never been any attempt to distinguish between them. Nor does our act of assembly make any difference between children born, as in this case, before the marriage, but recognized by the father, and those bom after it.
Judge Coalter said: “They (the parents) were bound, as well' by the ties of affection as those of morality and justice, not only.to provide a comfortable support for the innocent offspring, but to raise them to that state in society in which the laws of the country, upon the marriage of .the parents, places them, and, in this point of view, he could not perceive the difference between the situation of these children and a child in England who is born a week after marriage. The child is not, in rerum natura, a child of the marriage; yet he is so by the laws of the country, and would be a purchaser for a valuable consideration under a marriage settlement;”
Judge Brooke said: “The children, though base born, are legitimated by the marriage of the parents, and the recognition of them as his own by the husband both before and after the marriage. Upon this view of the subject, I cannot perceive the accuracy of the reasoning *which would put them in a worse situation than those born after the marriage. It cannot be founded on anything in the moral conditions of the parties to invalidate the contract. It has never been contended, that I know of, that a base begotten child could not be provided for by marriage settlement to the exclusion of the creditors by the principles of the common law. No case to that effect has been produced.”
Judge Fleming took the same view, and Judge Roane, who heard the argument, but was not present when the opinions were delivered, concurred with the other judges, as is shown by his approval of the decree entered in this court.
I have thus given extracts from the opinions of the judges, because they directly apply to one of the main grounds involved in the present case. If that case be an authority, it is conclusive of this. The counsel for the appellants have felt this difficulty throughout. They have, therefore, not hesitated to attack Coutts and Greenhow as not being a binding authority. One of the counsel maintains that the opinions just quoted are mere obiter dicta, because the deed of settlement was unassailable even as a voluntary deed. It is certainly a novel idea that the decision of an appellate court, based upon a clear, distinct ground, and sustained by elaborate reasoning, is to be treated as an obiter dictum, because, in the opinion of counsel, fhe decision might have been placed upon some other ground more satisfactory. The *561 learned judges who sat in that case saw, or thought they saw, a well-established principle or rule of law controlling their decision, and they did not hesitate to apply that principle as absolutely decisive without hunting for more questionable grounds of adjudication. Whether the deed of settlement would have been held valid as a voluntary deed, was a question barely considered. The creditor having *lost, as was claimed, the security provided for the payment of his debt by his own negligence, some of the judges were inclined to think that upon this ground he might be precluded from asserting any claims to the property embraced in the settlement; but this idea was regarded as wholly immaterial, and á decree was entered declaring “that the deed of settlement, having been bona fide made on valuable consideration, is valid and ought to be sustained, and no part of the estate therein comprised is subject to the debts of the said Reuben Coutts, the grantee.”
Much stress is laid upon the fact that the grantor in that case owed but one debt, which was provided for, and all idea of fraud on his part was disproved by the facts in the record. It is sufficient to say that in principle it makes but little difference whether there is one or a dozen debts. The one has equal claims to payment out of the debtor’s property as the dozen. The fact that there is but one is a mere circumstance to rebut the presumption of fraud. If in that case the bona fides of the husband was sufficient to protect a settlement of the entire estate, why is it that the bona fides of the intended wife will not have the same effect in the present case? Tf the grantee acts with good faith, it is precisely the same as if both parties were actuated by honest motives. In the language of Judge Cabell, in Coutts v. Greenhow, the wife and children were purchasers for a valuable consideration, and as such will hold the property settled on them, even against all creditors.
The counsel for the appellant insists further, that the settlement to be valid against creditors must have been an inducement to the marriage, which cannot be predicated of the settlement in this case, as it is certain that the woman was not induced to marry Mr. Wickham by any consideration of that sort. I might ask the learned ^counsel if he entertains the opinion that an ante-nuptial settlement can be set aside in any case because the court may think the marriage would have taken place without a settlement. In this country nine-tenths of the settlements are originated after the engagement is formed, and it would be the grossest injustice to say that the parties are induced to assume the relation of husband and wife by considerations of that sort. I know that writers sometimes speak of the settlement as the inducement to the marriage, and the marriage as the inducement to the settlement. This, I take it, is in contradistinction to a settlement after the marriage, or a settlement before marriage, made not in contemplation of marriage, but by way of advancement in consideration of natural love and affection. This distinction is adverted to and explained by Judge Baldwin in Welles v. Cole, 6 Gratt. 645. When the settlement is made in contemplation of marriage, the law presumes it was an inducement to it. For example: If a father makes such a settlement upon his daughter, even before any contract of marriage, if the settlement was known to third persons, it will be presumed it was a probable inducement to the marriage.
In Brown v. Carter, 5 Ves. R. 462, 878, Lord Alvanley said: “It does not appeal here that it (the settlement) was regarded as the principal inducement, but it might have been so-. The lady had a right, the children have a right, to have it considered that he had the estate which he appeared to have, and I should do gross injustice in taking away that benefit; therefore, I am of opinion, that although it does not appear that the friends of the wife did speculate upon this and take it into consideration, it must be presumed they did act upon it.” In Sterry v. Arden, 1 John. Ch. R. 260, the cases are considered by Chancellor Kent, and the doctrine laid down by Lord Alvanley fully approved. In Smith v. Allen, 5 Allen R. *454, the supreme court of Massachusetts lays down the rule in the most explicit manner, that although nothing is said by the parties, the law will presume that the property conveyed did constitute some part of the consideration which induced the party who received it, and who was to be benefited by it, to enter into that relation.
In Greenhow v. Coutts, 4 Hen. & Mun. 485, Chancellor Taylor based his decision mainly “upon the ground that the parties having lived in a state of illicit intercourse for years, it could not be presumed that the settlement was an inducement to the marriage.” That decision, as already stated, was reversed unanimously by this court, although there, as here, it was highly probable that the woman would have entered into the marriage on any terms the husband might have dictated. The judges attached so little importance to the point, they scarcely adverted to it. They placed their decision on the broad ground that marriage is a valuable consideration, and the wife and children purchasers of the property embraced in the settlement, and this rule is not affected by the fact of the cohabitation of the parties, and the birth of the children before the marriage. The counsel for the appellants have cited no decision, not even the dictum of a judge or commentator, except Chancellor Taylor, repudiating the doctrine of Coults v. Greenhow, although the same question has been the subject of investigation in other cases. Columbine v. Penhall, 1 Sm. and Giff. 228; Blumer v. Hunter, 8 Equity Cases, Law R. 46; 2 Minor’s Institutes, p. 708; 2 Lomax’s Digest.
The learned counsel has not hesitated, however, to denounce a policy, as he terms *562 it, which ■ favors the marriage of persons who have for years lived in open violation of law, and whose children, already grown, have their characters and principles formed by association with the degraded and infamous. To encourage such a marriage *is to encourage adulterous intercourse, and the raising of a vicious and ignorant family to corrupt the morals of the community. It is no part of my duty to vindicate the opinions of the eminent judges who decided Coutts v. Greenhow. I should have. thought, however, that marriage under such circumstances was the very best thing for the parties and for the community. The whole theory of our statutes legitimating children born out of wedlock, when recognized by the parent, is founded on that idea. Marriage is, at least, some reparation to the woman suffering under the deepest disgrace, and the innocent and unhappy offspring thrown upon the world as base born — marriage, which • raises the woman to the position of a lawful wife, and confers upon the children the status of legitimacy and respectability.
So far as Mrs. Wickham is concerned, there is .nothing in this record against her except her unfortunate relation to Mr. .Wickham before the marriage. Against the children nothing is said, except that they have not been educated as they ought ,to have been. Some of them are married and are raising respectable families. If the provision made for them is unjust to creditors, it is one of those wrongs which sometimes result from general rules of law operating with peculiar hardship in particular cases. Speaking for myself alone, I think these rules, though founded in wisdom, are but too often mere agencies for the perpetration of injustice and fraud, and that the whole subject needs the attention of the • legislative department.
But- we can give no relief, except by an ■ overthrow of principle as deeply imbedded in our system as any in the whole range of . American and English jurisprudence.
I regret that this opinion has been so extended, but it co.uld not be otherwise, at least by any effort of mine, *con- . sidering the magnitude, delicacy and importance of the question involved.
Upon the whole, I am for affirming the decree of the circuit court.
Christian, Anderson and Burks, J’s, concurred in the opinion of Staples, J.
Decree affirmed.

 Valuable Consideration — Marriage — Creditors. — In Clay v. Walter & Co., 79 Va. 92, the principal case was reaffirmed on the proposition that whatever the design of the grantor, a settlement on a woman in contemplation and in consideration of a marriage, is valid, unless her knowledge of his intended fraud is clearly and satisfactorily proved, and it was held that service by creditors of the grantor, of written notice on the grantee before the marriage, of the grantor’s fraudulent design in making the settlement, cannot affect her constructively with notice of such design, but her actual knowledge of and participation in that fraudulent design must be clearly established by proof. See also, Moore v. Butler, 90 Va. 683; Triplett v. Romine, 33 Gratt. 651; Coutts v. Greenhow, 2 Munf. 363; Eppes v. Randolph, 2 Call 125; Shobe v. Carr, 3 Munf. 10; Huston v. Cantril, 11 Leigh 136; Bentley v. Harris, 2 Gratt. 357; Welles v. Cole, 6 Gratt. 645; Fones v. Rice, 9 Gratt. 568; 1 Min. Inst. (4th Ed.) 319; 6 Am. & Eng. Enc. Law (2d Ed.) 724. See Code, sec. 2459, where it is provided that as against creditors whose debts were contracted at the time the conveyance or settlement was made marriage shall no longer be a valid consideration. Barton’s Ch. Pr. (2d Ed.) 549, 550, 561, 575, 578.