[No. 384.   Decided April 30, 1892.]

JOSEPHINE PRIGNON, *Appellant*, v. L. P. DAUSSAT AND AUGUSTINE DAUSSAT, *Respondents*.

CONVEYANCES—DELIVERY OF DEED—CONSIDERATION—PROMISE TO MARRY —FRAUDULENT CONVEYANCE.

Where a deed has been drawn up by a grantee and sent to the grantor to be executed, with directions to record same, the recording officer on delivery to him becomes the agent of the grantee, and such delivery gives the deed full force.

Where a deed recites that the consideration therefor is the promise of the grantee to marry the grantor, the deed containing the recital having been drafted by the grantee and sent to the grantor for execution, it is unnecessary, in order to render the consideration sufficient, that there should be a written memorandum of the contract of marriage signed by the grantee.

Where the grantee was unaware at the time of the execution of the deed to her in consideration of her marriage to grantor of the intent of the grantor to defraud his creditors, the fact that she became aware of such fraudulent intent before she complied with her contract of marriage, is not sufficient to avoid the deed, as the consideration for the deed is the agreement to marry, and not its actual consummation.

*Appeal from Superior Court, Skagit County.*

The facts are stated in the opinion.

*Tustin, Gearin & Crews,* for appellant.

*Brady & Schaefer,* for respondents.

The opinion of the court was delivered by

HOYT, J.—This action was brought by appellant to set aside a deed made by the respondent, L. P. Daussat, to the other respondent. It is conceded that the grantee had no knowledge that the grantor was indebted to anyone until long after the execution and recording of the deed, and that the deed in her hands, if otherwise supported, cannot be affected by any fraudulent intent which may have moved

the grantor to the making of the same. Appellant, however, attacks the deed upon two grounds: *First*, that it was never delivered to the grantee; and, *second*, that it was purely voluntary, being supported by no consideration whatever.

As to the first question, the conceded facts show that in accordance with a prior arrangement with the grantor the grantee caused the deed to be prepared and sent to the grantor with instructions for him to execute the same and have it recorded immediately. Under these circumstances, was the delivery to the auditor for record a delivery to the grantee? Many cases have been cited by the appellant to show that a delivery to a third person without the knowledge or direction of the grantee is not a good delivery, and for the purposes of this case this may be conceded to be the law. We have examined all the cases cited by the appellant and fail to find a single one among them that goes farther than we have above indicated. In the case at bar, however, there was not only a delivery by the grantor to the auditor under such circumstances as clearly showed his intent to give the instrument force, but such delivery was in compliance with the prior instructions of the grantee, and under these circumstances for the purposes of such delivery, the auditor became the agent of the grantee, and a delivery to him gave the deed full force.

As to the next question, the facts shown by the record are that long prior to the making of the deed in question negotiations had been in progress between the parties thereto looking to a marriage between them. More than a year before such execution the grantor in said deed had asked of the grantee her hand in marriage, but the grantee had refused at that time to enter into a contract in relation thereto on account of the want of visible means of support for a family in the hands of the grantor. Some time after this, by reason of the death of a relative, the

grantor became the prospective owner of property including that in question, and upon his suggestion of this fact to grantee, and an agreement on his part that as soon as his title to the land in question was perfected he would deed it to her, she consented to enter into a contract of marriage with him, and did enter into such contract. Some time after this, the grantor's title having been perfected, he wrote the grantee to that effect, and inclosed to her the probate proceedings showing title in him. Whereupon she at once took the papers to her attorney and caused to be prepared a draft of a deed which she sent the grantor with instructions for the execution and delivery as hereinbefore stated. At that time, as we have seen by the conceded facts above stated, the grantee in said deed had no knowledge whatever of any circumstances which would make the execution of such deed on the part of the grantor fraudulent as to him, and the sole question is as to whether or not as between the parties thereto there was any consideration for the execution of said deed. That the contract of marriage is a good consideration for a deed made on account thereof is unquestioned. Such a contract has been held not only to be a good consideration, but a valuable consideration of the highest nature. Two objections, however, are raised by appellant as against this marriage contract as a consideration for the deed: (1) That it was not in writing, and therefore void under the statute of frauds; and (2) that before the marriage relation was entered into in pursuance of said contract, knowledge of the fraudulent intent of the grantor was brought home to the grantee.

As to the first objection we may concede it to be as contended for by appellant, and yet as we view the facts the circumstances of this case do not bring it within the objection urged. As we view it this contract of marriage was in fact reduced to writing. It is true that it was not so reduced as to bring it strictly within the rule for the execution of such

contracts, but we think it came substantially within such rule; for while it is true that there was no memorandum of agreement signed by the party to be charged, yet we think there was sufficient recital of such contract in the deed to show a written contract. And that under the circumstances under which said deed was prepared and sent by the grantee to the grantor for execution she became bound by such recital. This, we think, would be true if the provision in relation to such contract was a recital pure and simple, as under the circumstances above stated we think a court should hold the grantee bound by all the recitals in the deed. But the statement relating to said contract in this deed is more than a simple recital, it is stated as a part of the consideration for the deed, and is substantially as follows:

"For and in consideration of the love and affection which the said party of the first part has and bears unto the said party of the second part, as also for the better maintenance, support, protection and livelihood of the said party of the second part, and in consideration of the promise of the said party of the second part to marry him, said party of the first part does by these presents give."

That this memorandum clearly evidenced an agreement of marriage on her part in consideration of making the deed on his part is beyond question. And if such memorandum had been signed by her, there could be no doubt but that the statute of frauds had been complied with. And as we have seen that her relations to such statement were such as to make it equally binding upon her as though she had signed it, it follows that there is a sufficient statement of the consideration for said deed. When this deed was delivered then it was supported by sufficient consideration and was binding not only as between the parties thereto, but as to all the world.

Was the fact that the grantee therein became aware of the fraudulent intent of the grantor before she had actually

complied with her contract of marriage by the consumma-
tion thereof sufficent to avoid the deed? No case has been
cited going to this extent; on the contrary several cases
have been cited which seem clearly to establish a contrary
doctrine.  See *Smith v. Allen*, 5 Allen 456, 81 Am. Dec. 758,
in which it was decided that though the marriage was pre-
vented by the death of the grantor, yet the deed remained
good in the hands of the grantee.  What is the considera-
tion for a deed made under such circumstances?  We
think it is the agreement to marry, and that if the agree-
ment is entered into in good faith, and under such cir-
cumstances as to bind the party, and the deed is executed
in consideration thereof, the transaction is complete, and
the deed will be unaffected by anything that may happen
thereafter.  If the grantee refuse to carry out her con-
tract the grantor has his remedy the same as he would
for the violation of any other executory agreement.  It
would not do to hold that the grantee should, without
fault on her part, be deprived of the benefits of her con-
tract.  For some months, and in principle it may as well
have been for some years, the grantee had been bound by
her agreement to marry, entered into in perfect good faith
and for a valuable and proper consideration.  To hold
that because she afterwards learned of some fact that
showed a fraudulent intent on the part of the grantor, she
should be deprived of the benefits of a contract which
during its existence, if she at all observed the proprieties
of the relation thereby established, practically prevented
her from taking any steps looking to the formation of a
marriage relation as between herself and any other party,
would to our minds be unjust in the highest degree.
Naturally during the continuance of this contract the asso-
ciations between the parties were very intimate and the
affections may have become so involved that to break off
the relation would destroy the happiness and perhaps the
health of the parties thereto.  If the argument of appel-

lant were to prevail, the innocent party must refuse to carry out a contract upon which her heart has become fixed or enter into the same without any such safeguard as her prudence had thought it necessary to provide for. It is impossible to place the parties in the condition they were in before the execution of the deed, and as the innocent party cannot be put *in statu quo*, she cannot be compelled to surrender the fruits of her bargain. But it is not necessary to enlarge upon the question. As we view the law, it is the contract to marry, and not the marriage itself, which is the consideration which supports the deed, and this being so, if at the time the deed is made the contract to marry for which it is given is a binding one between the parties, and executed with the solemnities required by the statute for that purpose, an indefeasible title vests in the grantee.

It follows that the decree of the court below must be affirmed.

ANDERS, C. J., and DUNBAR, STILES and SCOTT, JJ., concur.