J. P. LEININGER LUMBER COMPANY ET AL., APPELLEES, V. LILLIAN DEWEY, APPELLANT.

FILED APRIL 23, 1910.   No. 16,000.

1. **Divorce:** SUBSEQUENT CONTRACT OF MARRIAGE. Prior to the enactment of chapter 45, laws 1909, it was competent for a divorced person to enter into a contract, within six months of the entry of his decree of divorce, to marry subsequent to six months after the rendition of that decree.

2. **Fraudulent Conveyances:** MARRIAGE SETTLEMENT. Marriage, in contemplation of law, is a valuable consideration sufficient to sustain an antenuptial settlement and conveyance of property as against the creditors of the grantor, although such settlement and conveyance was made by him with intent to defraud his creditors, unless that intent is known to the grantee, or she has notice thereof at or before the time of the settlement.

APPEAL from the district court for Platte county: GEORGE H. THOMAS, JUDGE. *Reversed.*

*Albert & Wagner*, for appellant.

*A. M. Post* and *J. J. Sullivan, contra.*

Root, J.

In this action to foreclose a mechanic's lien, the defendant Lillian Dewey asserted title to the land as against the defendant Columbus State Bank by virtue of an antenuptial settlement and conveyance. The defendant bank claimed title by virtue of a judicial sale of said real estate as the property of George Dewey, husband of the defendant Lillian Dewey. The bank prevailed, and Lillian Dewey appeals.

The evidence is somewhat meager, but it appears therefrom that prior to 1905 the defendant George Dewey was married to a woman other than Lillian Russell, his present wife. Before commencing suit for a divorce from his first wife, George Dewey had an understanding with Miss Russell that he should procure a divorce, make a financial provision for her, and they should become man and wife, but no specific contract was entered into. On the 14th of June, 1905, George Dewey was divorced in an action, wherein, we infer from the record, he was plaintiff. July 10, 1905. George Dewey and Lillian Russell executed a written contract, wherein and whereby they agreed to marry within six months. He settled $5,000 upon her, and agreed that, if he was unable to pay the money, he would convey to her, in satisfaction of said settlement, the land in dispute in this action and a certain lot. Miss Russell, on her part, agreed to accept said settlement in full satisfaction of all claims she might otherwise have upon his estate. September 27, 1905, Dewey executed a deed, in the presence of an attesting witness, conveying said land to Miss Russell. The deed was not acknowledged, but was recorded September 30, 1905. One year thereafter Dewey made a second deed to his wife, duly acknowledged, for the purpose of correcting the defect in the former conveyance. December 20,

1905, the defendants Dewey were duly married, and from thence hitherto have lived together as man and wife. In April, 1905, George Dewey borrowed $1,700 from the defendant Columbus State Bank, and about that time became further indebted to it as the indorser of a note. July 10, 1905, the defendant George Dewey owed his co-defendant, the Columbus State Bank, nearly $2,000. He also owed about $500 to other creditors, and his property, other than that referred to in the marriage settlement, was of the value of about $1,000. In March, 1906, the defendant bank commenced an action, aided by attachment, in the district court for Platte county against the defendant George Dewey, and recovered judgment in June of that year for $1,066. Subsequently the land conveyed to Mrs. Dewey was sold by order of court as the property of George Dewey, and was purchased by said bank. The bank's cashier testifies that Mr. Dewey stated the transfer to Lillian Russell, later Mrs. Dewey, was for the purpose of preventing the first Mrs. Dewey recovering alimony, but subsequently the land had been reconveyed. George Dewey denies making any such statement. Mr. and Mrs. Dewey testify in the most positive terms that at the time the deed was executed, and at all times prior thereto, she was in absolute ignorance of his financial condition, and that the settlement was made for the sole purpose of providing for Mrs. Dewey and in consideration of their marriage.

Counsel for Mrs. Dewey argues that the marriage settlement and the deed made in conformity thereto vest her with a title superior to the claims of her husband's creditors. Counsel for the defendant bank insists that George Dewey in July, 1905, was incompetent to enter into a contract to marry or to make a marriage settlement; that his preceding oral agreement was against public policy, without consideration, and tainted the written contract, and for six months subsequent to the entry of his decree of divorce George Dewey's status was that of a married man.

The statute in force at the time the transactions herein considered occurred is as follows: "It shall be unlawful for any person who shall obtain a decree of divorce to marry again during the time allowed by law for commencing proceedings in error or by appeal for the reversal of such decree, and in case such proceedings shall be instituted, it shall be unlawful for the defendant in error or appellee to marry again during the pendency of such proceedings, and a violation of this act shall subject the party violating it to all the penalties of other cases of bigamy."

"No proceedings for reversing, vacating, or modifying any decree of divorce, except in so far as such proceedings shall affect only questions of alimony, property rights, custody of children, and other matters not affecting the marital relations of the parties, shall be commenced unless within six months after the rendition of such decree, or in case the person entitled to such proceedings is an infant, a person of unsound mind, within six months, exclusive of the time of such disability." Ann. St. 1907, secs. 5369, 5370.

It goes without saying that no contact, oral or written, made by George Dewey, while a married man, to marry Lillian Russell should be recognized as the foundation for any right. It is also clear that for six months subsequent to the time George Dewey procured his divorce he could not enter into the marriage relation so as to give Lillian Russell, or any woman other than his first spouse, a lawful status as his wife. But the statute did not prohibit Mr. Dewey from entering into a contract to marry six months after his divorce was granted. If he had the right to marry after December 14, 1905, he had the right, subsequent to his divorce, to agree to marry when permitted by statute to do so. The agreement was not to violate the law, but to perform a lawful act. The authorities upon this proposition are not numerous, but, so far as we are advised, are uniform and sustain the fore-

going propositions. *Buelna v. Ryan,* 139 Cal. 630; *Cooper v. Bower,* 96 Pac. (Kan.) 59, 794.

We have examined the cases cited by counsel for the bank, but do not find them in point. In every instance the contract was made during the time at least one of the parties thereto was married to another person. Counsel for the bank cites, and possibly the trial court was influenced by, *Eaton v. Eaton,* 66 Neb. 676. Some of the statements made by the learned author of that opinion tend to support the contention of the bank in this case, but a consideration of the entire opinion will convince the reader that those statements were unnecessary for the determination of the question involved in that case and do not bind the court. In the cited case the plaintiff, within six months of the time she was divorced from her first husband, married the defendant. She cohabited with him for a year, and then prosecuted an action for a divorce. Her second husband alleged in his answer that said marriage was void, and asked that it be so decreed. The district court found for the defendant and entered a decree according to his prayer. This court held the plaintiff's second marriage was void, but that the conduct of the parties, subsequent to six months after the plaintiff secured her divorce from her first husband, gave the litigants the status of man and wife. The argument of our former chief justice did not commit us to the position that, for six months after a decree of divorce is rendered, the parties to such an action continue to be man and wife, with all the consequences attending that relation. The possibilities of such a status are grave, involving, among other things, the law controlling the descent of property, and we are of opinion the legislature did not, prior to 1909, intend that an absolute decree of divorce should be construed by the courts to be interlocutory. The judgment provided for by the statute (Ann. St. 1909, sec. 5369) prior to the enactment of chapter 45, laws 1909, severs the marital relation, but, like any other judgment, is subject to review and reversal by any pro-

ceedings known to the law. To prevent divorced couples marrying within the time provided by law for an appeal, the prohibition against reentering the marriage relation was imposed by the legislature, for a violation of that mandate, suitable punishment was provided, and the law will refuse to enforce any contract entered into in defiance of the statute. The legislature not having prohibited a divorced person from entering into a contract, within six months of his divorce, to marry six months thereafter, the contract was not illegal. Marriage in contemplation of law is a valuable consideration sufficient to sustain a conveyance or settlement of property, as against the creditors of the grantor, even if made by him with the intent to defraud his creditors, unless that intent is known to the grantee or she has notice of that fact before the contract is executed. *Tolman v. Ward*, 86 Me. 303; *Boggess v. Richards, Adm'r*, 39 W. Va. 567; *Nance v. Nance*, 84 Ala. 375; *Sterry v. Arden*, 1 Johns. Ch. (N. Y.) *261; *Bunnel v. Witherow*, 29 Ind. 123; *Prewit v. Wilson*, 103 U. S. 22; *Campion v. Cotton*, 17 Ves., Jr. (Eng.) *264, 34 Eng. Reprint, 102; 20 Cyc. 504.

The evidence, as heretofore stated, is insufficient to charge Mrs. Dewey with knowledge or notice of any fraudulent intent her husband may have had in transferring the land in question to her, and for that reason the judgment of the district court must be reversed. The other matters referred to in the bank's brief are not deemed of sufficient importance to justify extending this opinion by specific reference thereto.

The judgment of the district court upon the issues joined between Lillian Dewey and the Columbus State Bank is reversed and the cause remanded for further proceedings.

REVERSED.

FAWCETT, J., not sitting.