[No. 14279.  Department One.  February 8, 1918.]

## LULU C. ARMSTRONG, *Appellant,* v. FLORENCE ARMSTRONG *et al., Respondents.*[1]

FRAUDULENT CONVEYANCES—PURSUANT TO ANTENUPTIAL CONTRACT —INTENT TO DEFRAUD—PRESUMPTION.  An antenuptial agreement to convey all the husband's property decreed to him in a divorce from his former wife, is fraudulent as to the latter, where the second wife knew of his continuing obligation to pay monthly alimony, and that the transfer would prevent the collection thereof; the intent to defraud being presumed where the parties knew such would be the effect of the transfer.

Appeal from a judgment of the superior court for Pacific county, Hewen, J., entered January 6, 1917, dismissing an action for an injunction, tried to the court. Affirmed.

*Welsh & Welsh* and *Wallace Mount, Jr.,* for appellant.

*Fred M. Bond,* for respondents.

WEBSTER, J.—On April 29, 1913, James P. Armstrong obtained a decree of divorce from the respondent, Florence Armstrong, and on November 5, 1913, married Lulu C. Armstrong, the appellant herein.  By the decree of divorce, James P. Armstrong was awarded all of the property theretofore acquired by the parties, which consisted of a building and personalty therein situate in Raymond, Washington; the decree further providing that he should pay to his divorced wife, so long as she remained unmarried, alimony in the sum of $35 per month.  The respondent, Florence Armstrong, did not appear in the action, but the portion of the decree fixing the property rights was in accordance with the written stipulation of the parties.  Prior to his marriage with appellant, and in consideration thereof,

[1]Reported in 170 Pac. 587.

James P. Armstrong signed and delivered to appel-' lant a written memorandum agreeing to convey to her, after the marriage was consummated, all of the property awarded to him by the divorce decree, and in furtherance thereof, such conveyance was executed and delivered to the appellant on January 24, 1914. Subsequently Armstrong defaulted in the payments of alimony as required by the decree, whereupon respondent Florence Armstrong instituted an action therefor, and on October 24, 1916, obtained a judgment against James P. Armstrong for the sum of $624.10. The sheriff levied execution thereon against the property theretofore conveyed to the appellant, who brought this action to enjoin the sale thereof. From a judgment of dismissal, the plaintiff appeals.

The sole question presented is whether the conveyance from Armstrong to his second wife is void as against the claim of his former wife for alimony, based upon the divorce decree.

The general rule is that a conveyance from the husband to the wife, made pursuant to a written antenuptial agreement in consideration of such marriage, is not void as to the creditors of the husband, even though the grantor may have intended thereby to defraud his creditors, if the wife was innocent of, and had no knowledge of, the fraudulent intent of the husband. *Prewit v. Wilson,* 103 U. S. 22; *Herring v. Wickham,* 29 Gratt. (Va.) 628, 26 Am. Rep. 405; *Tolman v. Ward,* 86 Me. 303, 29 Atl. 1081, 41 Am. St. 556; *Nance v. Nance,* 84 Ala. 375, 4 South. 699, 5 Am. St. 378; *Leininger Lumber Co. v. Dewey,* 86 Neb. 659, 126 N. W. 87, 12 Ann. Cas. 471, note; *Boggess v. Richards' Adm'r,* 39 W. Va. 367, 20 S. E. 599, 45 Am. St. 938, 26 L. R. A. 537; *Prignon v. Daussat,* 4 Wash. 199, 29 Pac. 1046, 31 Am. St. 914.

While, conversely, it is equally well settled that, if the grantee, at the time the contract was entered into,

had knowledge, either actual or constructive, of the vendor's fraudulent intent, such conveyance is void and of no avail against the claims of the creditors of the vendor. *Harmon v. Ryan,* 10 La. Ann. 661; *Davidson v. Graves,* Riley Ch. (S. C.) 232; *McGowan v. Hitt,* 16 S. C. 602, 42 Am. Rep. 650; *Dent v. Pickens,* 46 W. Va. 378, 33 S. E. 303; *Keep v. Keep,* 7 Abb. N. C. (N. Y.) 240; 12 R. C. L. pp: 518, 519, § 48.

There is no conflict of authority, the principle being uniformly applied throughout the cases. If the grantee, in ignorance of the conditions that make the grantor's act fraudulent, enters into the relation in good faith, the transfer is sustained, but if her knowledge of the facts necessarily discloses the true situation, the conveyance is avoided and the deed set aside.

In the present case, the divorce decree, which established the grantor's ownership of the property as his separate estate, likewise fixed the wife's claim for alimony a continuing obligation which the divorced husband was required to pay in definite monthly installments so long as the divorced wife remained unmarried. This was an obligation of the highest character, one of first call upon the earnings and financial resources of James P. Armstrong, one which he could not brush aside for his own happiness and comfort, nor was it subservient to the additional burdens of another marriage. With full knowledge of these conditions, appellant willingly consented to hasten the marriage in consideration of his agreement to convey to her his entire property, and this in view of the self-evident fact that such transfer would prevent his compliance with the terms of the decree. She testified that she knew of his obligation to pay $35 per month to his former wife, the consideration for the former's wife's share of the property when the decree was granted; that, before making the marriage agreement, the matter was fully

discussed between herself and Mr. Armstrong, and that she knew the proposed transfer would convey to her all of the property which he possessed. Under such circumstances, can it be said that she was innocent and had no knowledge of the contemplated fraud?

Neither was the transaction rendered less fraudulent by the fact that there were no alimony payments overdue when the marriage settlement was consummated. The obligation was a continuing one, fixed and determined by the decree. It was the divorced husband's duty to make provision with this respect for the future, a fact necessarily known and appreciated by the appellant. Both parties to the proposed marriage agreement were fully aware of this condition. Both realized that the transfer, if effective, would accomplish the inevitable (and we believe the intended) result—secure the property for the use and enjoyment of the new relationship, with Armstrong immune from the alimony provisions of the divorce decree.

To sustain this transaction is to foster a spirit of moral irresponsibility wholly repugnant to the teachings of common honesty, unwarranted by the settled principles of universal law.

In *McGowan v. Hitt, supra,* it was said:

"The case of *Davidson v. Graves,* Riley Ch. 232, fully sustains the Circuit decree in this case on the fraud question. It is most earnestly argued before us that said case is clearly in conflict with a long series of well-considered cases which conclusively settle that marriage is a sufficient consideration to uphold a settlement by an insolvent person, even though fraud be thereby intended, if the wife be ignorant of that intent. We concede that doctrine to be so settled, and, it seems to us, to be fully recognized in the case of *Davidson v. Graves.* In that case, two settlements were before the court—one, ante-nuptial, and the other post-nuptial— the former, being a settlement by the son of Admiral

Graves, is that to which the chief portion of said decision relates. It was a settlement without precedent, in that it conveyed, in consideration of marriage, *the whole estate of the husband.* None of the settlements in any of the previous cases had attempted such wholesale fraud. . . . But in *Davidson v. Graves,* and also in this case, the whole estate of the husband was conveyed away, nothing whatever being reserved for the payment of any debts, however small or few. The very contents of such a settlement are, at least, sufficient notice of fraud to make it the imperative duty of the wife to inquire whether it could be honestly made. There was no such inquiry in *Davidson v. Graves,* and none in this case. The wife is, therefore, regarded as having the knowledge which proper inquiry would have given her, and she is, therefore, affected by the fraud involved in the settlement. This is the principle, which applied to the special facts in the case of *Graves v. Davidson,* places it in complete harmony with the previous cases, and leaves it unassailable.''

The case of *Prignon v. Daussat, supra,* is in perfect harmony with this principle. While there the deed was sustained as against the creditors of the husband, it was for the reason that the wife was wholly ignorant of the husband's indebtedness when the marriage agreement was made. In the course of the opinion, we said:

''It is conceded that the grantee had no knowledge that the grantor was indebted to anyone until long after the execution and recording of the deed, and that the deed in her hands, if otherwise supported, cannot be affected by any fraudulent intent which may have moved the grantor to the making of the same. . . . At that time, as we have seen by the conceded facts above stated, the grantee in said deed had no knowledge whatever of any circumstances which would make the execution of such deed on the part of the grantor fraudulent as to him, and the sole question is as to whether or not as between the parties thereto there was any consideration for the execution of said deed.''

In *Dent v. Pickens, supra,* it was said:

"Much stress is laid upon the sanctity of the marriage contract by the appellee,—that the consideration of marriage, in an antenuptial contract, is of the very highest, to which I most readily and heartily assent; and the proposition is abundantly supported by the highest authority, including this court, which holds that such contract cannot be impeached as fraudulent by existing creditors unless it be shown that both parties thereto participated therein, or had notice of fraudulent intent. *Boggess v. Richards' Adm'r,* 39 W. Va. 567, 20 S. E. 599. We are told that: 'The common law, though it abhors every sort of cheating, loves matrimony. Its principles all point toward it when the circumstances of a case expose them to this attractive force.' We must remember that in this case we have two antenuptial contracts to contend with, and to adjust the complications which bad faith, at least on the part of the double contractor, has brought about. While it is true that the common law loves matrimony, it will not permit matrimony to be used by a guilty party to escape the consequences of his fraudulent, deceitful, and unlawful conduct."

And in *Keep v. Keep, supra,* it was said:

"In view of the circumstances of the case, we need not consider the distinction which exists between a voluntary conveyance and one that is not; between a merely good and a valuable consideration; nor the principle upon which a purchase, made in good faith, of one insolvent may be, and often is, supported. We have rather to consider the act. of one who makes himself insolvent by giving away his property, and the concurrent act of one who accepts the gifts thus misapplied. If the defendant, Lester Keep, had applied the money which he had in the bank, and that raised on the chattel mortgage, to the payment of the plaintiff, the conveyance of his house to the other defendant, on her becoming his wife, would have been more equitable. I am constrained on these proofs to hold that there was no valid consideration for the transfers of the property. . . . Mr. Keep further states that, in their ne-

gotiation, he said to the other defendant: 'I told her, if she would marry me, I would give her all I possessed.' It is apparent that purpose was carried out. She had the land, the money in bank, and that raised on the chattel mortgage. There can, then, be no doubt that, she knew he did not intend to pay his debts, and that he retained no means for that purpose."

In 12 Ruling Case Law, § 48, pages 518, 519, the principle is announced in this language:

"And consequently where both parties concur in a fraudulent intent, an antenuptial conveyance is invalid as against creditors of the grantor, but even though the prospective husband intended to defraud his creditors, the conveyance will not be set aside in the absence of the clearest proof of his intended wife's participation in the fraud. The woman is guilty of participation in the fraudulent intent in such case if she has knowledge of the fact that the grantor intends thereby to hinder and defraud his creditors, or if she has knowledge of matters which should have put her on inquiry."

The intent to defraud will be presumed where the parties to the transaction knew that such would be the effect of the transfer. *Nichols v. Nichols,* 61 Vt. 426, 18 Atl. 153. The views herein expressed are in keeping with our own cases dealing with kindred questions. *National Surety Co. v. Udd,* 65 Wash. 471, 118 Pac. 347; *Allen v. Kane,* 79 Wash. 248, 140 Pac. 534.

The judgment will be affirmed.

ELLIS, C. J., PARKER, MAIN, and FULLERTON, JJ., concur.