CHARLES REYNOLDSON, APPELLEE, V. VIVIAN REYNOLDSON, APPELLANT.

FILED MAY 29, 1914. No. 17,773.

1. **Marriage: CONTRACT.** The contract requisite to the creation of the marriage relation need not be expressed in any special manner, or by any prescribed form of words, but may be sufficiently evidenced by any clear and unambiguous language or conduct.

2. ———: COMMON LAW MARRIAGE. Evidence examined, its substance stated in the opinion, and *held* sufficient to sustain a finding that, when the marriage ceremony was performed between plaintiff and defendant, the defendant was the common law wife of one James S. Boyer, and therefore was incapable of entering into the marriage relation with the plaintiff.

APPEAL from the district court for Boone county: GEORGE H. THOMAS, JUDGE. *Affirmed.*

*H. C. Vail* and *F. J. Mack,* for appellant.

*James S. Armstrong, A. E. Garten* and *Frank D. Williams, contra.*

BARNES, J.

Charles Reynoldson commenced this action in the district court for Boone county against Vivian Reynoldson for a divorce on the ground of adultery. Before trial the action was changed by the plaintiff in an amended petition to one for an annulment of the marriage relation between himself and the defendant, in which it was alleged that the defendant was the common law wife of James S. Boyer at the time when the marriage ceremony between the plaintiff and the defendant took place. A trial was had, which resulted in a finding and decree declaring the marriage void and annulling the marriage relation between the plaintiff and defendant, and from this decree the defendant has prosecuted an appeal.

The appeal really presents but one question for our determination, and that is: Was Vivian Reynoldson, at the

.Reynoldson v. Reynoldson.

time of the marriage between herself and Charles Reynoldson, competent to contract marriage with him? James S. Boyer testified that he was manager of the ·Cody Hotel at Cody, Nebraska; that he became acquainted with the defendant at McCook, Nebraska, April 18, 1907; that he and the defendant were arrested and taken to the state penitentiary for safe-keeping; that, afterwards, while they were confined in the jail at McCook, they occupied the same cell, and a marriage contract between them was entered into "to live together as man and wife." He further testified that after he had been liberated, and the defendant had received a jail sentence, they agreed that after she had served her sentence she should go to Red Oak, Iowa; that he was to get some money, and after he got it he was to go there, and they were to live together as man and wife. He said: "I went to Red Oak, Iowa, out to her people's house, got her, and we lived together from that time continuously until the 4th of July, 1910, as man and wife." He further testified, in substance, that they lived together in various places in Nebraska, Colorado, and Wyoming as husband and wife, and held themselves out to be such.

There is evidence in the record that the defendant registered at the Cornland Hotel, Lexington, Nebraska, March 11, 1909, as Mrs. J. S. Boyer, Sheridan, Wyoming; that Boyer also registered, and they occupied the same room. It further appears that the defendant wrote a postal card and mailed it at Sterling, Colorado, in which she said: "My dear Husband: Everything O. K. Will write to-morrow. As ever, V. B." This card was addressed to J. S. Boyer, Scott's Bluff, Nebraska. On September 31, 1910, she wrote Boyer a letter from Alliance, Nebraska, in which she closed with, "Your wife, Vivian." It also appears that his laundry was marked as follows, "J. S. B.," and hers, "V. B." Her umbrella was marked with the same initials. On cross-examination the witness Boyer further testified in relation to the marriage contract as follows: "She said, * * * 'You will go away and leave me, being that I am in custody; and that you have come clear;' and I told her that I wouldn't, and we agreed

\* \* \* to live together as man and wife, and represent ourselves as the same. Q. You agreed to that at that time? A. At that time; yes, sir. \* \* \* Well, she said that she would agree to it."

A. Bauman, jr., ex-sheriff of Dodge county, testified that while sheriff, and shortly after the trouble at McCook, as related by J. S. Boyer, he detained Boyer and Vivian Boyer at Fremont, but released them in a few moments; that she did most of the talking. She told the witness that Boyer was her husband.

J. C. Cook testified, in substance, that he was county attorney at the time testified to by sheriff Bauman, and he interrogated Mr. and Mrs. Boyer as follows: "I asked her what relation she was to this man, and she said this man was her husband."

Mrs. Mary Weisbrod testified that she was running a rooming house at Sterling, Colorado, for a good many years; that Mr. Boyer and a lady as his wife stopped at her rooming house for two or three weeks. She identified Boyer and the defendant in this case as the parties, and testified that while they were at her house they conducted themselves properly. She said: "I never had a quieter couple in my house." On cross-examination the witness testified that they purported to be husband and wife.

William Weisbrod testified that he had a rooming house in Sterling, Colorado; that he knew J. S. Boyer and his wife; that their conduct while they were at his house was as a perfect lady and gentleman so far as he knew.

Ella Hague testified that she kept a rooming house at Sterling, Colorado; that she had been acquainted with J. S. Boyer and his wife, indicating the defendant in this suit; that they had a room at her house, and represented themselves to be Mr. and Mrs. Boyer. "Mr. J. S. Boyer, I believe is his initials, and Vivian Boyer." She testified that Mrs. Boyer came to her house first, and represented herself to be Mrs. Boyer. Several other witnesses testified to the same effect, and each one of them spoke of the good character of both Mr. and Mrs. Boyer while they were at Sterling, Colorado.

The evidence of these witnesses covered a period of about one year immediately following the time when the marriage contract was entered into at McCook, Nebraska. There was testimony of a witness at Grand Island, Nebraska, that while Boyer and the defendant were living at that place they represented themselves as husband and wife, and so registered at the different boarding houses and hotels. Similar testimony was produced from witnesses in Kearney, Nebraska, Lexington, Nebraska, and Gothenberg, Nebraska. One Cullom, a merchant at Gothenberg, testified, in substance, that Mrs. Boyer came into his store and introduced herself; that she priced some rugs, furniture and carpet; that at that time he said he was selling under the instalment plan, and she stated that she would have her husband come in; that he had known Boyer and the defendant for about three years, and that he had never known the lady under any other name than Mrs. Boyer; that she introduced herself as Mrs. Boyer, and that he had always known her by that name; that Mr. Boyer usually paid the bills.

Mrs. Mary Cullom testified that she first met Mr. Boyer about 8 years ago when he was buying horses; that she met the defendant as the wife of Boyer; that she was called Mrs. Boyer, and told the witness she had been married for 15 years; that she never doubted the fact that Boyer and the defendant were husband and wife.

On the other hand, the defendant denied that she was the wife of J. S. Boyer, and testified that she was generally known as a sporting woman, and that Mr. Boyer was generally known as her companion, getting trade for her. She admitted, however, that they had registered at hotels as husband and wife, and there is considerable evidence in the record supporting the testimony of the defendant.

It also appears that James S. Boyer prosecuted an action in the district court for Cherry county, Nebraska, against the defendant in this case for a divorce; that she made no appearance in that action; and a decree was rendered in favor of Boyer and against the defendant dur-

96 Neb. 18

ing the pendency of the present suit. The decree in that case was introduced in evidence in the instant suit over the objections of the defendant, who contends that this evidence was incompetent, and proved nothing as to the question of defendant's common law marriage with Boyer, while, on the other hand, it is contended by the plaintiff that this evidence was competent, and settled the status of the parties thereto. As we view the question, it is not at all necessary to decide that the evidence was competent. The testimony without this was ample and sufficient to prove the common law marriage of defendant and James S. Boyer, and, as the court was supposed to consider only competent evidence, its reception in any event could only amount to error without prejudice.

There is also testimony in the record which shows that when Boyer was unable to furnish the defendant with money she abandoned him, and took up with a man named Henry Doggett. It appears that in a short time she and Doggett learned of the desirability of the plaintiff, Reynoldson, as a party with whom marriage might be contracted, and that Reynoldson was induced to go to Columbus, and see "a good, honest girl who wanted to marry a good man and a home;" that upon his arrival there he was met by the defendant, who called herself Vivian Devere, and he was induced to marry her. It appears that she soon brought dishonor to the plaintiff's home and scandalized the community where they resided. She brought her paramour, Doggett, and a vile woman and other boon companions to his home, where they were guilty of such conduct that this action was commenced.

We find that the record clearly shows that, when the marriage ceremony was performed between plaintiff and defendant, she was the common law wife of James S. Boyer, and was not competent to enter into a marriage contract with the plaintiff. *University of Michigan v. McGuckin*, 62 Neb. 489; *White v. White*, 82 Cal. 427, 7 L. R. A. 799; *Eaton v. Eaton*, 66 Neb. 676; *Bailey v. State*, 36 Neb. 808; *Coad v. Coad*, 87 Neb. 290.

As we view the record, the decree of the district court was right, and is

AFFIRMED.