## FRIEDENWALD v. FRIEDENWALD
### (two cases).*

(Court of Appeals of District of Columbia.
Submitted October 11, 1926.   Decided
December 6, 1926.)

Nos. 4438, 4439.

1. Divorce ⬥⟿327—Decree of divorce obtained by one spouse by simulated residence in state other than matrimonial domicile is not binding on courts of other states or of District of Columbia.

Where one spouse goes into state other than that of the matrimonial domicile, and there obtains a divorce without actual service of notice on the other, by virtue of a residence simulated for that purpose only, the decree is not binding on the courts of other states, or on courts of the District of Columbia.

2. Marriage ⬥⟿11—Marriage held invalid in District of Columbia on ground of invalidity of prior divorce of one or both parties (Rev. St. Colo. 1908, § 2116).

Marriage held not valid in District of Columbia, where prior divorces of parties obtained in Colorado were invalid, under Rev. St. Colo. 1908, § 2116.

3. Marriage ⬥⟿22—Relations attributed by parties only to invalid ceremonial marriage held insufficient basis for finding of common-law marriage.

Where relations of parties living as husband and wife were attributed by them only to a ceremonial marriage, which was invalid by reason of prior invalid divorces, held, maintenance of such relationship after removal of impediments to lawful marriage did not result in a valid common-law marriage.

4. Divorce ⬥⟿225—Allowance of attorney's fees to wife in divorce suit held not improper, though marriage was held null and void (Code, § 975).

In action for divorce, where defendant challenged validity of marriage and prayed annulment thereof, allowance of attorney's fees to plaintiff under Code, § 975, was not improper, though marriage was held invalid.

Robb, Associate Justice, dissenting in part.

Appeal from the Supreme Court of the District of Columbia.

Action for divorce by Marion B. Friedenwald against Herbert Friedenwald. From a decree denying divorce and holding marriage invalid, but allowing counsel fees to plaintiff, both parties appeal. Affirmed.

Harry A. Hegarty, of Washington, D. C., for plaintiff.

H. E. Davis, of Washington, D. C., for defendant.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. These appeals are taken from two several decrees entered by the lower court in the same case, wherein Marion B. Friedenwald was plaintiff, and Herbert Friedenwald defendant. The first appeal is from a decree refusing to grant the plaintiff a limited divorce from defendant, the court holding that there was never any valid marriage status existing between the parties. The second appeal is from a decree allowing counsel fees for the attorneys of the plaintiff for services in and about the case.

The record in the first appeal discloses that in the month of August, 1912, the plaintiff was a married woman, whose matrimonial domicile was in England, where her husband, who was a British subject, was then residing, and that the defendant was a married man, whose residence and matrimonial domicile were in New York, and that his wife and himself were both citizens of that state; that the plaintiff and defendant met by chance in New York City, and, notwithstanding their existing marriage relations with others, soon became engaged to marry one another; and that afterwards, by mutual agreement and at defendant's expense, they repaired to Colorado, in order there to procure divorces from their respective spouses and marry one another. Under the laws of Colorado no person was entitled to a divorce in that state unless such person had been a bona fide resident and citizen of the state for one year prior to the commencement of the divorce suit. Rev. Stat. Colorado, § 2116.

But the plaintiff on June 3, 1914, after a residence of about a month in the state, began a suit for divorce against her husband, who still resided in England, on the grounds of cruelty and desertion, and on October 23, 1914, she was awarded a decree of absolute divorce from him. It appears from the record that in the year 1908 or 1909 the plaintiff, with her English husband, had visited for a year in Colorado, and had then returned together to England; but in the year 1914 she was not a citizen or resident of Colorado. Notice to the husband in the divorce suit was given by publication only; no actual personal service was made upon him, nor did he appear in any manner in the case. On June 2, 1915, the defendant, after a residence of a year in Colorado, filed a suit against his wife, who was still residing in New York City, praying for an absolute divorce from her upon the ground of habitual drunkenness and cruelty. Notice of the suit was given by publication only; the wife was never actually or personally served with any notice, nor did she appear either personally or by attor-

*Certiorari denied 47 S. Ct. 476, 71 L. Ed. ——.

ney in the case. On September 24, 1915, a decree of absolute divorce was entered in his favor in the case.

At a time after the date of the last decree, to wit, on December 20, 1915, while the former spouses of the respective parties were still living and not otherwise divorced from either of them, the plaintiff and defendant were ceremonially married to one another by a justice of the peace at St. Louis, Mo. It may be noted at this point that afterwards, to wit, on September 5, 1917, the plaintiff's husband, who had continued to reside in England, obtained a decree of divorce in that country against her. On July 24, 1918, the defendant's wife, who had continued to reside in the state of New York, in a suit instituted there, wherein the defendant appeared by counsel, obtained a decree of divorce against him, the court holding that the Colorado divorce was without force against her in the state of New York, and decreeing that the defendant should not marry any other person than the plaintiff until after her death. The record discloses that she departed this life on February 12, 1920.

[1] Upon these facts the lower court held that the divorces procured by the respective parties in Colorado should not be, and are not, recognized as valid divorces by the courts of the District of Columbia. We think this ruling was correct. It is a well-established proposition that, where one spouse goes to a state other than that of the matrimonial domicile, and there obtains a divorce without actual service of notice upon the other, by virtue of a residence simulated for that purpose only, and not in good faith, the decree is not binding upon the courts of other states. Bell v. Bell, 181 U. S. 175, 21 S. Ct. 551, 45 L. Ed. 804; Streitwolf v. Streitwolf, 181 U. S. 179, 21 S. Ct. 553, 45 L. Ed. 807; Haddock v. Haddock, 201 U. S. 562, 26 S. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1; 19 Corpus Juris, 370 (citations). Such decrees are not binding upon the courts of the District of Columbia. Diggs v. Diggs, 53 App. D. C. 56, 288 F. 262.

[2] The lower court held furthermore that the ceremonial marriage of the parties in St. Louis would be considered invalid by the courts of the District, since at that time each party to the marriage had a living spouse from whom no valid divorce had been obtained. In our opinion this ruling also was right. The Colorado divorce being void for want of jurisdiction in contemplation of our laws, the parties were as incapable of entering into a lawful marriage with one another as if those decrees had never been procured. Andrews v. Andrews, 188 U. S. 14, 23 S. Ct. 237, 47 L. Ed. 366; People v. Dawell, 25 Mich. 247, 12 Am. Rep. 260.

[3] It was claimed by the plaintiff that, even if the ceremonial marriage at St. Louis should be held invalid, nevertheless the parties, having lived together as husband and wife, and having held themselves out to the public as such, and having continued this relationship after the impediments to a lawful marriage between them, had been removed by reason of the divorces obtained by their respective spouses, they should be held as having contracted a valid common-law marriage. This claim was rightly overruled by the lower court. The relations of the parties were attributed by them only to the invalid divorces and the invalid marriage aforesaid, and these cannot be made in any way to serve as the basis of a lawful matrimonial status between them. Lanham v. Lanham, 136 Wis. 360, 369, 117 N. W. 787, 17 L. R. A. (N. S.) 804, 128 Am. St. Rep. 1085; 26 Cyc. 890, 891 (citations). Moreover, the record does not sustain the claim that the parties continued their relations as husband and wife after the removal of such impediments, for it fairly appears that they had ceased such relationship before that time. The decree of the lower court, refusing a divorce to the plaintiff on the ground that she was not the defendant's wife, was therefore right.

[4] The second appeal involved in the record relates to the allowance of a counsel fee by the court to the attorneys of the plaintiff under the provisions of section 975, D. C. Code, which authorizes the court to require the husband to pay suit money to the wife, including counsel fees, to enable her to conduct her case, during the pendency of a suit by the husband to declare the marriage null and void, where the nullity is denied by the wife. The answer filed by the husband in this suit challenged the validity of the former marriage between the parties, and prayed that it be held null and void. This justified the court in allowing counsel fees to the wife "to enable her to conduct her case." The fact that the court found against her in the case did not affect the rightfulness of the allowance, nor did the fact that the issue was made by the answer of the husband, instead of by original bill filed by him.

We therefore affirm the decrees of the lower court in both appeals, the costs of both to be paid by the parties in equal shares.

ROBB, Associate Justice (dissenting). Passing the question whether, in an equity case, a party may take advantage of a situation induced by him and for which he is responsible (but see Kaufman v. Kaufman,

177 App. Div. 162, 163 N. Y. S. 566) was there evidence of a common-law marriage between these parties, after the death of Friedenwald's first wife on February 12, 1920?

On April 8, 1920, Friedenwald made a conveyance "to my wife, Marion R. Friedenwald," one of the parties herein. At the trial the following stipulation was entered into: "It is stipulated and agreed by and between the parties hereto by their respective counsel that Herbert Friedenwald, the defendant, in the month of July, 1920, took an apartment at the Hotel Woodward, Fifty-Fifth street and Broadway, New York City, where the defendant and plaintiff lived together as Mr. and Mrs. Friedenwald, the defendant signing the register as Mr. and Mrs. Friedenwald, and stayed there until about November 1, 1920. Formal proof of the above facts is hereby waived."

Notwithstanding this and supporting evidence in the record, this court now rules that "the record does not sustain the claim that the parties continued their relations as husband and wife after the removal of such impediments." In my view, if the stipulation means anything, it is that the parties continued the relationship of husband and wife during the period mentioned therein. That common-law marriages are recognized in the state of New York is settled law. Ziegler v. Cassidy's Sons, 220 N. Y. 98, 115 N. E. 471, Ann. Cas. 1917E, 248; Hinman v. Hinman, 147 App. Div. 452, 131 N. Y. S. 861; Taylor v. Taylor, 173 N. Y. 266, 65 N. E. 1098. And, if the marriage was valid there, it was valid here. Travers v. Reinhardt, 205 U. S. 423, 27 S. Ct. 563, 51 L. Ed. 865.

These parties in good faith contracted a ceremonial marriage, and continued to live together as husband and wife after the removal of all impediments. In 38 C. J., at page 1320, the rule applicable to such a situation is thus stated: "Where parties to an agreement and relationship which, but for the existence of an impediment, would have constituted a valid marriage continue in the relationship in good faith, upon the removal of the impediment the law will establish between them a valid common-law marriage. But, where the relationship was meretricious at its inception, it will be presumed so to continue, in the absence of evidence to the contrary. * * *" In support of the text cases are cited in the courts of Colorado, Kansas, Mississippi, Nebraska, Nevada, New Jersey, New York, Oklahoma, and Pennsylvania.

In 18 R. C. L. pp. 436, 437, and 438, is the following: "The general rule is that if parties desire marriage, and do what they can to render their union matrimonial, but one of them is under a disability, their cohabitation thus matrimonially meant and continued, after the disability is removed, will, in law, make them husband and wife from the moment that such disability no longer exists, although there are no special circumstances to indicate that the parties expressly renewed their consent or changed their mode of living after the removal of the impediment. * * * The fact that the parties made no new arrangement after the removal of the impediment may be a circumstance in their favor, in that it may indicate that they did not regard a ceremony as necessary, thus bespeaking good faith in the beginning; whereas a public marriage would be likely to create a scandal, and might possibly, though not necessarily, show a consciousness that the previous relations were not lawful. * * *"

Bishop, in his work on Marriage, Divorce, and Separation, vol. 1, § 345, says: "Where parties are living together, wishing and believing themselves to be husband and wife, if an impediment to-day prevents the legal status from being superinduced thereby, and to-morrow it is removed, there is reason to hold that the status uprises as the impediment sinks."

The adjudged cases fully support the foregoing statements of the rule. Perhaps as concise a statement as may be found in any of those decisions appears in Smith v. Reed, 145 Ga. 724, 726, 89 S. E. 815, 816 (L. R. A. 1917A, 492) as follows: "If a man and woman begin to cohabit, not as man and wife, but as a meretricious cohabitation, their continued cohabitation will be presumed to continue on the same basis, unless something is shown to the contrary. But where a man and woman enter into a ceremonial marriage, thus openly declaring their intention to be husband and wife, and live together, the marriage may be void because of some impediment, and the cohabitation may not be legal; but if the impediment is removed, and the matrimonial cohabitation continues, it is to be presumed that the intent to be husband and wife, expressed in the ceremonial marriage, continues, unless the contrary appears, and the continued cohabitation after the removal of the impediment is to be considered as under such an intent and declaration rather than with an unlawful intent."

So strongly do courts favor the marriage relationship in such circumstances that a common-law marriage has been presumed

from continued cohabitation and repute, after the removal of impediments, even though the parties were ignorant of such removal. Barker v. Valentine, 125 Mich. 336, 84 N. W. 297, 51 L. R. A. 787, 84 Am. St. Rep. 578; Manning v. Spurck, 199 Ill. 447, 65 N. E. 342; Eaton v. Eaton, 66 Neb. 676, 92 N. W. 995, 60 L. R. A. 605, 1 Ann. Cas. 199.

In the present case, the parties undoubtedly knew of the removal of the impediments, and to me the conclusion is irresistible that their relationship thereafter constituted a common-law marriage. The decree therefore should be reversed in No. 4438.

I concur, however, in the decree in No. 4439.