## UTTERBACK v. UTTERBACK.
### No. 38201.

District Court of the United States for the District of Columbia.

April 16, 1947.

Alton S. Bradford, of Washington, D. C., for plaintiff.

Milton I. Lewis, of Washington, D. C., for defendant.

KEECH, Associate Justice.

### Findings of Fact

The parties to this action were married in this jurisdiction on March 11, 1944, just 32 days after a decree had been entered in this Court granting defendant-husband an annulment of his former marriage to Marilyn Greely Utterback (Civil Action No. 20157), which decree carried the usual provision that it was not to take effect or become absolute until the expiration of the time allowed for taking an appeal, or the final disposition of any such appeal. The decree was entered on the 8th day of February, 1944, at which time the appeal period was three months (Rule 10(a), Civil Cases, Court of Appeals Rules), the time limit having been increased from 30 days by an amendment to the aforesaid rules, which amendment became effective January 7, 1944.

Following their marriage the parties lived together as husband and wife, considered themselves to be married, and as such were known in their community and among their friends.

During a part of their married life, the defendant-husband was in the Armed Services of the United States, and while he was so engaged, plaintiff-wife was the recipient of allotments from defendant-husband and, in addition, other contributions from him in sizeable amounts.

The testimony also shows that during this period of defendant's absence, correspondence of a most affectionate nature was passed from the wife to the husband.

From the record it is apparent that some time after defendant's discharge from the Armed Services in October, 1946, differences arose between the parties, causing them to seek advice of counsel with reference to their marital difficulties. In the course of these negotiations with their counsel, the attorney for the plaintiff-wife discovered that the time for appeal had not elapsed in the defendant-husband's prior annulment suit at the time when the parties to this action were married, and this suit followed.[1]

---

[1] Complaint filed December 21, 1946.

The record is devoid of anything indicating a lack of matrimonial intention, except for the technical bar.

### Conclusions of Law

█ The record in this case must be considered in the light of the fact that this is a common-law marriage jurisdiction. Hoage v. Murch Bros. Const. Co., 60 App. D.C. 218, 50 F.2d 983.

While there are a few decisions to the contrary, by far the great weight of authority supports the conclusion of Schouler on Marriage, Divorce, and Separation, Vol. 2, § 1129, wherein it is stated: "Where a marriage entered into in good faith by one is void on account of a previous marriage of one of the parties, it may be validated by removal of the impediment, and the continued cohabitation of the parties." (Citing cases.) Or, as stated in Bishop in his work on Marriage and Divorce, Vol. 1, p. 970: "If the parties desire marriage, and do what they can to render their union matrimonial, although one is under a disability, their cohabitation thus matrimonially meant, will in matter of law make them husband and wife, from the moment when the disability is removed."

A case almost directly on all fours with the case here under consideration was that of Wilson v. Burnett, 1918, 105 Misc. 279, 172 N.Y.S. 673. There the defendant had procured an interlocutory decree of divorce and married plaintiff ten days before entry of the final decree. This occurred in 1914. Plaintiff testified he did not know that defendant's divorce was not final until the time he left, whereupon he sued for annulment. There the Court said: "We think the plaintiff is not entitled to the relief asked, for the reason that the facts disclosed make out a valid common-law marriage."

As to the creation of a common law marriage under these circumstances, the Court said: "Here, however, it was the evident purpose of the plaintiff and defendant to be legally married, and to assume toward each other the mutual obligations of husband and wife. When the legal impediment to their marriage was removed, they continued to live together as husband and wife for more than four years, and while the testimony is very meager the only fair inference is that they held themselves out to the public as such, and beyond any question intended to continue that relationship, *until suddenly, for some reason not disclosed, they agreed to ask this court to annul the marriage.* The court can reach but one conclusion under such circumstances, and that is that after the impediment against a legal marriage was removed they each consented and agreed to continue their relations as husband and wife, and acted accordingly. This made out a good common-law marriage as we have already seen. There are no children as the issue of this marriage; but, had there been such issue, no court, we take it, would have decided the children illegitimate.

"It makes no difference in principle, however, whether there are children or not. *Every presumption is in favor of the validity of a marriage* (citing cases), and the relation established and recognized for the time this one had been ought not to be lightly set aside at the mere wish and suggestion of the parties. *The marriage relation is too sacred to be thus trifled with."* (Emphasis supplied.)

In Poole v. People, 1898, 24 Colo. 510, 52 P. 1025, 1026, 65 Am.St.Rep. 245, the parties married both believing the woman to have been divorced from her former husband. A year thereafter the woman's first spouse procured a divorce. The parties lived together for six years, but when a support case was filed against the husband, he raised the question of the validity of the marriage. There it was held: "If parties desire marriage, and do what they can to render their union matrimonial, but one of them is under a disability, their cohabitation thus matrimonially meant and continued after the disability is removed will, in law, make them husband and wife from the moment that such disability no longer exists. * * * Although no subsequent marriage ceremony was performed, as is usual to evidence contracts of this character, they having originally assumed the marriage relation in good faith, in pursuance of what they believed to be a valid contract of marriage, and having continued that relationship for a long period after it

could have been legally assumed, this raises the presumption that thereby they intended and meant marriage,—mutually assented to a contract of that character."

See also, Alto v. State Industrial Accident Commission, 1926, 118 Or. 231, 246 P. 359, where it was held that there is a presumption that parties to a second marriage are innocent of any crime or wrong, since the law will infer matrimony rather than concubinage. And in Smith v. Reed, 1916, 145 Ga. 724, 89 S.E. 815, 816, L.R.A.1917A, 492, where under similar circumstances it was held that "at least a renewed consent might be inferred."

In the case now before the court, the marriage between plaintiff and defendant was an attempt, made in good faith, to form a legal union. Both intended to live in wedlock. In the absence of an impediment to the marriage, no ceremony would have been required, this being a common-law marriage jurisdiction. When the impediment was removed, why may not consent be inferred from continued cohabitation? This same question arose on at least two occasions in the House of Lords. In Campbell v. Campbell, 1 L.R.Scotch Div. 182, Lord Wesbury said: "You must infer the consent to have been given at the first moment when you find the parties able to enter into the contract." And again, in De Thoren v. Attorney General, L.R. 1 App.Cas. 686, it was declared: "It must be inferred that the matrimonial consent was interchanged as soon as the parties were enabled, by the removal of the impediment, to enter into the contract."

This precise point seems never to have been decided in our own jurisdiction, as evidenced by the reported cases. In the case of Tillinghast v. Tillinghast, 58 App. D.C. 107, 25 F.2d 531, where husband was awarded annulment of a marriage, wife's subsequent marriage before the expiration of time for taking an appeal was held to be valid, since provision that the annulment decree should not be effective until expiration of time for taking appeal was to protect the unsuccessful party, whose right of appeal terminated with her marriage. Friedenwald v. Friedenwald, 57 App.D.C. 13, 16 F.2d 509, certiorari denied 273 U.S. 763, 47 S.Ct. 476, 71 L.Ed. 879, is distinguishable on the facts. There it was held that where relations of parties living as husband and wife were attributed by them only to a ceremonial marriage, which was invalid by reason of prior invalid divorces, the maintenance of such relationship after removal of the impediments to lawful marriage did not result in a valid common law marriage. But it is to be noted that in this case the record did not sustain the claim that the parties continued their relations as husband and wife after the removal of the impediments, for it appeared that they had ceased such relationship before that time.

In the light of the foregoing, therefore, plaintiff's prayers are each and all denied. The Court decrees that, while the ceremonial marriage of the parties was void under Title 16, Sec. 403, of the District of Columbia Code, their continued cohabitation after the removal of the impediment constituted a valid common law marriage as of that moment, and such valid common law marriage continues to exist.

Upon proper notice, counsel for defendant will present appropriate order.