70 So.2d 639

**WEBB v. WEBB.**

5 Div. 566.

Supreme Court of Alabama.

Jan. 14, 1954.

Further Application for Rehearing Stricken

March 11, 1954.

J. A. Walker, Jacob Walker, Jr., and Walker & Walker, Opelika, for appellant.

Patterson & Patterson and Albert L. Patterson, Phenix City, for appellee.

GOODWYN, Justice.

Appellant, the wife, filed her bill of complaint against appellee, the husband, in the Circuit Court of Lee County, in Equity, on January 7, 1953, seeking the following relief: (a) a divorce on the ground of voluntary abandonment, (b) custody of and support for the parties' eight-year old son, (c) alimony, and (d) allowance of a solicitor's fee. The husband filed an answer and cross-bill denying the material allegations of the bill and seeking, by the cross-bill, the following relief: (a) a divorce on the ground of voluntary abandonment, (b) custody of the child, and (c) divesting the wife of title to certain real estate and personal property and investing it in him. The wife filed demurrers to the cross-bill, which were overruled, and also filed an answer denying the material allegations of the cross-bill. In view of our holding, there is no need to discuss the demurrers.

Evidence was taken orally before the trial judge. On final submission, the court rendered a decree dismissing the wife's bill and granting the relief sought by the husband, except that the wife was permitted custody of the child during the months of June, July and August in each year, and was also permitted to keep a Chevrolet panel truck claimed by the husband. This appeal is from that decree.

We will refrain from engaging in a detailed discussion of the evidence, as it would serve but to place in bold relief this domestic unhappiness and no useful purpose would be subserved thereby. Such has been the policy of this court for many years. The evidence has been read and studied and carefully considered by the court in consultation. Our conclusion is that the trial court erred in dismissing the wife's bill and granting relief to the husband. It is our view that the wife is entitled to a divorce; that the husband's cross-bill should be dismissed; that the decree dismissing the wife's bill should be reversed; that a decree should be rendered here granting the wife a divorce on the ground of voluntary abandonment and giving her custody of the child for nine months in each year, beginning September 1 and ending May 31, and giving the father custody during the months of June, July and August in each year, with each parent having the right to visit the child at any reasonable time; and, further, that the cause should be remanded for determination by the trial court of allowances to the wife for her own support, for the support and maintenance of the child, and for a reasonable solicitor's fee.

## As to the Divorce

Each party charges the other with voluntary abandonment. Divorce on this ground is authorized by Code 1940, Tit. 34, Sec. 20, par. 3, as amended by Act No. 463, appvd. July 10, 1943, Gen. Acts Reg.Sess.1943, p. 425, which provides as follows:

"The circuit court in equity has power to divorce persons from the bonds of matrimony, upon bill filed by the aggrieved party, for the causes following: * * * 3. For voluntary abandonment from bed and board for one year next preceding the filing of the bill. * * *"

■ The rule of our cases is that to constitute "voluntary abandonment" as a ground for divorce there must be a final departure, without the other party's consent, without sufficient reason therefor, and without the intention to return. Kidd v. Kidd, 246 Ala. 313, 20 So.2d 515; Perry v. Perry, 230 Ala. 502, 162 So. 101; Mayo v. Mayo, 199 Ala. 551, 552, 74 So. 971; Brown v. Brown, 178 Ala. 121, 122, 59 So. 48.

■ On original consideration, we expressed the view that neither party was entitled to a divorce because we did not think there was present here a sufficient showing of absence "without consent". On application for rehearing, we have again examined the evidence and have reached the conclusion, after most careful consideration and full discussion in consultation, that we were in error in denying the wife a divorce. Our first conclusion from the evidence was that the departure of the husband on September 6, 1951, and his sixteen months' absence thereafter, were "acquiesced in" by the wife and that such "acquiescence" constituted "consent" on her part, which, under the rule of our cases, would deny to her a divorce on the ground that her husband had "voluntarily" abandoned her. Kidd v. Kidd, supra; Perry v. Perry, supra; Mayo v. Mayo, supra; Brown v. Brown, supra. While there might be evidence to support an inference that the wife was not displeased by the husband's absence, we do not find

any evidence that she "consented" or "agreed" to it. We perceive no duty on the part of the wife to make overt objections or protestations against the husband's departure nor to seek out the departed husband and to make overtures to him to return to her. In this case it was the husband, and not the wife, who withdrew from the established home. The cessation of cohabitation was complete for a period in excess of the prescribed year, without the performance of any marital duties, except that the husband continued to send to the wife the monthly payment of $120 due on the home mortgage executed by him. But, even if it be conceded that such payments on the husband's debt inured to the wife's benefit as owner of the home, this would not affect her right to a divorce on the ground of voluntary abandonment. We have held that "the fact that the husband has furnished adequate support during separation does not bar the wife's right to divorce, if the ground therefor otherwise exists." Benton v. Benton, 214 Ala. 321, 323, 107 So. 827, 829. We find no evidence to support the husband's claim that the wife is the defaulting party. According to the husband's own testimony, he made no request that the wife join him in his changed residences; that he saw no reason to ask her as he knew she would not move with him.

## As to Custody

■ In determining which parent is entitled to the custody of a minor child, each case must stand on its own peculiar facts. Gardiner v. Willis, 258 Ala. 647, 64 So.2d 609, 611; Green v. Green, 249 Ala. 150, 30 So.2d 905; Sneed v. Sneed, 248 Ala. 88, 26 So.2d 561. However, the controlling consideration is the welfare of the child. Gardiner v. Willis, supra; Green v. Green, supra; Hammac v. Hammac, 246 Ala. 111, 19 So.2d 392.

■ It seems to us, under the circumstances here, that the best interests of the minor son would be served by continuing his principal care and custody with his

mother. To this end, an order will be here made, as hereinabove indicated, granting her custody for the nine months of September through May in each year and granting the husband custody for the three months of June, July and August in each year, with the right of each parent to visit the child at any reasonable time. In reaching this conclusion, we are impressed with the fact that during the father's absence from the home in Auburn for some sixteen months prior to the initiation of these proceedings, the mother had the complete care and custody of the child. We see no good reason why the principal custody should now be taken away from her.

■ From the evidence, it is indicated that both the mother and the father probably will want to take the child outside the State of Alabama during their respective custodial periods. As a condition for such removal the party removing him shall execute a bond with good and sufficient surety to be approved by the register of the circuit court of Lee County, in equity, or by that court, and deposited with said register, in the amount of $1,000, payable to the other party, conditioned upon the party executing the bond surrendering the child to the other party at Auburn, Alabama, at the beginning of the period prescribed by Alabama decree for custody of said minor child by the other party: Wheeler v. Wheeler, 249 Ala. 119, 122, 29 So.2d 881. Such requirement is subject to future modification or change as the circumstances may warrant, to be determined by the trial court.

The chancellor's decree does not indicate the reason for giving custody to the father. It may be that the controlling factor was the statute which provides that "in cases of abandonment of the husband by the wife, he shall have the custody of the children after they are seven years of age, if he is a suitable person to have such charge." Code 1940, Tit. 34, Sec. 35. In view of our reversal of the decree, this statute, of course, has no application.

## As to the Property

When the parties married, the husband was the owner of a vacant lot in Auburn, Alabama. This lot was acquired by him by gift from his mother in 1935, about five years before the parties' marriage. They came to Auburn to live in 1946, after which they built a duplex residence on a portion of this property. To finance the construction, a $16,000 loan was obtained and a mortgage placed on the property as security therefor. In November, 1950, the husband sold his confectionary business in Auburn. In March, 1951, he bought a laundry business at Barnesville, Georgia, and remained in that business until July, 1951. It appears that this business owed more money than was thought at the time of the purchase, and it was found that the business could not carry the load. It further appears that there was some question about the husband's liability for such pre-existing indebtedness. He testified that he was advised by counsel in Georgia to transfer his property to his wife's name as a protective measure. In this connection, the husband testified as follows:

"He advised me that this other indebtedness might be collected by virtue of this clause in here, and either directly or indirectly his advice was to put the property in my wife's name."

On July 6, 1951, while in Barnesville, Georgia, the husband conveyed the 1947 Chevrolet panel delivery truck to his wife for a recited consideration of $500. On July 12, 1951, the husband requested the wife to meet him at an attorney's office in Auburn, Alabama; that he was going to deed the other property to her. They went to the lawyer's office, and the husband there executed two warranty deeds to the real estate and a bill of sale to the 1949 Ford 2-door sedan. The deed to the home lot recited a consideration of $500, the deed to the vacant lot a consideration of $100, and the bill of sale to the Ford sedan a consideration of $50. These three instruments were prepared by the attorney at the husband's request. After execution and delivery of

them to the wife, the attorney advised her that the property belonged to her, and further; that the obligation of paying the mortgage on the home still remained with the husband. According to the attorney, no discussion whatever was had as to the reason why the husband was deeding the property to the wife. It appears that there had been a discussion prior to that time between the husband and the wife, of which the attorney had knowledge, concerning a settlement between them. With respect to the transaction, the attorney had this to say:

"Mr. Webb came to me one day and told me he wanted two deeds from himself to his wife, explaining that part of the property was encumbered and part was not, that he wanted me to draw a power of attorney and that he would come back. He would sign the deeds, Mrs. Webb would sign the power of attorney. The best of my recollection is that both came to my old office and signed those papers. I handed the papers to Mrs. Webb and I said something like this—'I hope this means that there has been a reconciliation and that you have become reconciled—or something of that sort.'"

The wife denies that anything was said about deeding the property to her for any limited purpose; that she was surprised, yet pleased, when the husband told her he was going to deed the property to her.

The husband's theory in seeking a divestment of title out of his wife and investing it in him is that a resulting trust was created in his favor. It is alleged in his cross-bill that "all of said property was paid for with the money of this respondent and cross-complainant and that the title to said property was allowed to be taken by the complainant and cross-respondent in her name, but at the taking of said title in her name, it was understood that she was taking the title to said property in trust to be held for this respondent and cross-complainant and that the property was not to be considered by the complainant as a gift or advancement, * * *." But the evidence does not support these allegations. At the time the husband deeded the real property to the wife, the title was in him and had been in him since 1935. In Hooks v. Hooks, 258 Ala. 427, 63 So.2d 348, 350, the following from J. A. Owens & Co. v. Blanks, 225 Ala. 566, 144 So. 35, is quoted with approval:

"A resulting trust, the holding of title by one with beneficial ownership in another, is a creature of equity, based upon the prima facie presumption that he who pays the whole or an aliquot part of the purchase price for lands becomes the beneficial owner. The doctrine does not rest on an express, but on an implied, agreement, by which the title is taken in the name of another as matter of convenience. No tort or breach of duty is involved in this form of trust. The conveyance, as made, may be in keeping with the common purpose of all parties.

"But, in the nature of the case, as often declared, this beneficial ownership must arise at the time of the purchase, when the status of title becomes fixed. Since the trust arises from the payment of purchase money, such payment must ordinarily be made at the time of the purchase."

Here, the title was already in the husband at the time he deeded the real estate to his wife. There was no payment of the purchase price by the husband at the time the title was placed in the wife. It is manifest that the evidence does not make a case for construction of a trust in favor of the husband in the land.

The evidence shows that the title to the Ford sedan was originally taken in the names of both parties. The wife testified that she paid the purchase price. However that may be, the husband transferred and assigned to her whatever interest he had in the car. He also transferred and assigned to her the Chevrolet panel truck. We find nothing in the evidence to rebut the presumption of a gift of this property to the wife. Marshall v. Marshall, 243 Ala. 169, 171, 8 So.2d 843; Fiscus v. Young, 243 Ala. 39, 42, 8 So.2d 514; McNaron v. McNaron, 210 Ala. 687, 99 So. 116.

432

Another conclusive reason why the husband cannot prevail is because the transfer of the property to his wife was, according to his own testimony, for the purpose of protecting it from existing claims of his creditors. Being so, he has no standing in equity to have the beneficial interest in the property declared in his favor. A fraudulent conveyance is operative as between the parties, and only those who are or may be injured by the fraudulent transaction may avail themselves of the fraud. Heidt v. Wallace, 239 Ala. 246, 248, 194 So. 501; Stamey v. Fortner, 233 Ala. 133, 170 So. 196; Moore v. Altom, 196 Ala. 158, 159, 71 So. 681.

The trial court divested the wife of title to all of the property, both real and personal, except the panel truck. In this, there was error.

### As to Allowances for Support and Maintenance and Solicitor's Fee

Although there is evidence from which we might fix such allowances, we deem it more appropriate that this be done by the chancellor. To this end, an order of remandment is due to be entered.

The decree of the trial court is reversed and a decree will be here rendered in conformity with what we have said in this opinion; and, further, the cause is remanded for determination of allowances to the wife for her own support, the support and maintenance of the parties' minor child, and a reasonable fee to her counsel for prosecuting this suit. The costs in the trial court and in this court are taxed against the husband, the appellee here.

Original opinion withdrawn and this opinion substituted. The application for rehearing by appellee is denied. The application for rehearing by appellant is granted and the cause is reversed and remanded.

Reversed, rendered and remanded.

LIVINGSTON, C. J., and SIMPSON and CLAYTON, JJ., concur.