PER CURIAM.
The appellant, plaintiff below, appeals from a final decree denying the relief requested by plaintiff to have certain conveyances set aside as fraudulent and granting the defendant-appellees’ counterclaim to have certain lands reconveyed to the defendant.
The individual defendants below offered to purchase from plaintiff below a tract of land consisting of 7,367.22 acres at $150 per acre. To effect the purchase, the defendants formed a corporation known as Shel-lon, Inc., and advanced $150,000 to the newly formed corporation to close the transaction. They agreed that the lands obtained by Shellon, Inc., would be conveyed to the defendant City National Bank of Miami Beach, as trustee, to hold for their benefit.
On November 22, 1960, Shellon, Inc., executed the purchase agreement with the plaintiff which included the promise to obtain the pledge of all the corporate stock “as additional security” for the payment of the balance of the purchase price for said lands.
At the closing on February 27, 1961, plaintiff executed and delivered its deed conveying to Shellon, Inc., 7367.22 acres of land. Shellon, Inc., paid $150,000 in cash to plaintiff and agreed to pay an additional $955,083, representing the balance of the purchase price, with interest, in agreed installments. Shellon, Inc., executed and delivered its promissory note describing the amount due and the terms of payment, then executed and delivered its mortgage pledging 6,367.22 acres of land conveyed. One thousand acres of the lands conveyed were excluded from the effect of the mortgage.
At the time of the closing, the stock was delivered to an attorney in Wauchula, as escrow agent, to hold under the terms of the Stock Pledge Agreement.
In April, 1961, Shellon, Inc., conveyed the lands obtained from plaintiff to the defendant bank as trustee. It is alleged that the bank paid no consideration nor did it deliver anything in exchange for the conveyance.
*865 On March 13, 1962, a letter was forwarded to the escrow agent placing in escrow a deed executed by the defendant hank reconveying to Shellon, Inc., the lands encumbered by the mortgage with directions to deliver it to plaintiff in case of default.
In April, 1963, the president of Shellon, Inc., requested plaintiff to postpone the interest payment then due and owing as of February 27, 1963, and not to declare a default because the “other people in the corporation” requested him to do so. At that time a Modification of Mortgage Agreement was executed wherein plaintiff agreed to release from the mortgage 300 acres of land and postpone the payment of $42,304.-98 then due and owing in exchange for the payment of $62,430.38. When this money was paid to release the 300 acres, a former attorney for the purchaser and its shareholders, forgot to send a substituted deed to the escrow agent. This led to the defendants’ counterclaim for reformation and the chancellor’s finding for defendants on the issue.
The February 27, 1964, mortgage payments were not made and a, default occurred at that time. The escrow agent delivered the Shellon, Inc., stock to plaintiff and the deed back from the land trust to Shellon, Inc. (This deed, by mistake, included the 300 acres which had actually been released from the mortgage.)
After the default above mentioned had occurred, the plaintiff instituted a fraudulent conveyance suit against the defendants. The chancellor found for the defendants and held, inter alia, that the conveyance from Shellon, Inc., to City National Bank of Miami Beach was for a good consideration and was not a fraudulent conveyance.
We concur in the decision of the lower court and affirm his decree, which we are hereinafter reproducing as the opinion of this court, since it expresses our views on the law in this case.
“1. The plaintiff, Bentley Brahman Ranch, Inc., sued the defendants herein contending that a conveyance by Shellon, Inc., to the North Shore Bank of Miami (now City National Bank of. Miami Beach) on April 10, 1961, was a conveyance in fraud of Plaintiff’s rights as a secured creditor of Shellon. Plaintiff also claims that the conveyance by Shel-lon was in fraud of plaintiff’s rights as the pledgee of Shellon stock.
“2. As to the issues raised by plaintiff’s complaint against the defendants, the Court finds that the equities are with the defendants. Plaintiff’s case is bottomed on charges of fraud which the Court finds the record fails to substantiate. The land transaction here litigated was highly complex. All the parties thereto were represented by able and reputable counsel at every stage thereof. None of the clients acted in the matter without the advice of their counsel who, in turn, sought nothing more than a full and fair protection of their clients’ respective legal rights. A misunderstanding between the parties there was; but, fraud there was not.
“3. The conveyance by Shellon to the City National Bank of Miami Beach was for a good and valuable consideration and was not a fraudulent conveyance. Prior to the closing of the land transaction with plaintiff, the individual defendants, Gramling, Leifman and Shapiro, had ‘advanced’ $150,000.00 to their lawyer’s escrow account for Shellon’s use at the closing. There was an agreement in advance that the 1,000 acres of released land obtained at the closing by Shellon was to be deeded to the individuals in consideration of the monies they had previously advanced. See and Compare : Blackwelder v. D’ercole Enterprises, Inc., (Fla.App.1963), 148 So.2d 721.
“4. The parties to the land transaction herein agreed at arm’s length to a price of $150.00 an acre on February 27, 1961. Plaintiff received $150,000.00 for *866 1,000 acres which was sold free and clear and a purchase money note and mortgage amounting to $150.00 an acre on the remaining lands sold. Five weeks later, Shellon conveyed the encumbered land to the defendant Bank subject to plaintiff’s mortgage. Since plaintiff was a secured creditor, it was subject to the rule stated by the Supreme Court in Bay View Estates Corporation v. Southerland, 114 Fla. 635, 154 So. 894, 901-902, that:
“ 1 * * * If the security was ample at the time of the transfers attacked, the imputation of fraud from a voluntary conveyance by the debtor of other property does not obtain. * * * ’
While the conveyance by Shellon to the Bank was for a good and valuable consideration, the above rule seems to preclude a recovery by plaintiff even if the contrary were the case. All the parties set a price of $150.00 per acre for the land and it was so valued in each transaction here involved. The charge of fraud has a hollow ring in the face of such facts.
“5. The Court further finds that the defendants have sustained their burden of proof on the defenses asserted in paragraphs 18-20 of their answer. Without belaboring the issues, the record clearly supports the conclusions that plaintiff accepted the benefits of the April 16, 1963, Modification of Mortgage Agreement and the March 13, 1962, Stock Pledge Modification Agreement. To this day, plaintiff retains the benefits of these agreements ($60,000.00 in cash and a deed back to Shellon of the encumbered lands) and cannot be heard to deny the remaining terms of said agreements.
“6. As to defendants’ Count I counterclaim for reformation, the Court finds that the equities are with the defendants. The evidence clearly shows that because of the mistake and inadvertence of defendants’ counsel, * * * a substituted deed was not placed in escrow when the last 300 acres was released from the purchase money mortgage. $45,000.00 was paid for the release of this land and paragraph 3 of the Mortgage Modification Agreement expressly provided :
“ ‘ 3) Mortgagee recognizes that Mortgagor is entitled to have three hundred (300) acres released from the lien of the above described mortgage for the payment of the $45,000.00 principal hereinabove referred to, pursuant to the release clause contained in the said mortgage, and Mortgagee agrees to execute and deliver the release of mortgage for the three hundred acres selected by Mortgagor, pursuant to the terms of the said mortgage.’
Under the Stock Pledge Modification of March 13, 1962, the only deed to be held in escrow was ‘a deed which will place title to all properties encumbered by (plaintiff’s) mortgage in Shellon, Inc.’ The documentary and oral testimony shows beyond question that it was not the intent of the parties to deed back the 300 released acres.
“7. Defendants have abandoned Count II of their counterclaim and the Court accordingly finds for the plaintiff-counter-defendant on Count II.
“8. It was stipulated herein that this final decree would be binding on Shellon, Inc., as if it were a party hereto (Plaintiff now owns all its stock).”
As we stated above, we concur in Judge Lane’s opinion and decree and affirm his decision.
Affirmed.
LILES, C. J., and ALLEN and PIERCE, JJ., concur.