[No. 1377-1. Division One—Panel 2. November 5, 1973.]

HORACE H. DAVIS, *Respondent*, v. WALTER J. NIELSON *et al.*, *Appellants.*

*Siderius, Lonergan & Crowley* and *C. R. Lonergan, Jr.,* for appellants.

*Jon Marvin Jonsson, Davis & Roetcisoender* and *Horace H. Davis,* for respondent.

CALLOW, J.—This is an action initiated by a creditor of the grantor to set aside an alleged fraudulent conveyance of real property situated in Island County, Washington. The trial court held the conveyance to be fraudulent, and the parties to the conveyance, Walter J. and Ethel Nielson appeal.

On February 12, 1964, the plaintiff and the defendant, Walter J. Nielson, executed as promissors a promissory note, at a time when the two defendants were husband and

wife, in the amount of $5,000 payable on May 10, 1964, to the order of the Commercial Bank of Seattle. While the plaintiff signed this note as a principal obligor, the sum obtained therefrom was to enable Walter Nielson to exercise an option to purchase real property in King County, on which he conducted a retail paint store as sole proprietor. Thereafter, Walter Nielson, as purchaser, executed a real estate contract in exercise of this option, the downpayment for which was the $5,000 obtained from the Commercial Bank of Seattle.

On February 12, 1964, Walter Nielson executed a promissory note for $5,000 payable on demand to the plaintiff, the consideration for which was the plaintiff's having cosigned this note to the Commercial Bank of Seattle. Demand for payment of this note had been made by plaintiff prior to the present action. Then on July 7, 1965, Walter Nielson executed a deed and purchaser's assignment of the real estate contract to the plaintiff, which document specified on · its face:

> This assignment is given as security for the payment of a promissory note in the sum of $5,000, payable to Commercial Bank of Seattle, on which note assignee is signed as co-maker, but is actually security, and the proceeds whereof were used by assignor as down payment on the above-described contract.

On April 5, 1966, the defendants were divorced. In the decree, Walter Nielson was awarded the real property, on which he conducted his paint store as his separate property subject only to the $5,000 note obligation owed to plaintiff. Real property in Island County was equally divided by the court with each defendant being awarded one-half as separate property. On April 11, 1968, Walter Nielson conveyed to Ethel Nielson by quitclaim deed his interest in the Island County property for a stated consideration of $10 together with Ethel Nielson's oral promise to assume and pay certain attorney's fees and costs owing by Walter Nielson to the plaintiff. It is this conveyance that was found by the trial court to be fraudulent.

Three days later, the defendants remarried. The trial court found that the remarriage had been planned at the time of the conveyance on April 11, 1968. On August 25, 1969, the defendants were again divorced.

On November 19, 1969, Walter Nielson, without the knowledge of Ethel Nielson, conveyed to Horace Davis, by quitclaim deed his interest and after-acquired title to the King County property on which the retail paint store was located. The following statement appeared on the face of the deed:

This deed is for good and valuable consideration and is neither given nor received with the intention of merging with this instrument that Deed and Assignment of Real Estate Contract dated July 7, 1967, given as security, nor of waiving any of assignee's rights thereunder.

Plaintiff then brought suit against the defendants for the $4,500 balance still owing on the note and on April 1, 1970, obtained a default judgment against the defendants and their marital community.

On April 5, 1971, the present action, to set aside the conveyance of the Island County real estate was filed. On April 30, 1971, the default judgment in the prior suit on the promissory note was affirmed as to Walter Nielson but set aside as to Ethel Nielson and the marital community. Further, the prior cause of action on the promissory note was dismissed with prejudice as to Ethel Nielson and the Nielson marital community. The judgment against Walter Nielson in the prior case (the promissory note action) expressly stated it was entered without prejudice to plaintiff's claim in this case (the fraudulent conveyance action).

On May 4, 1970, the plaintiff sold the paint store property acquired from Walter Nielson netting $7,360.56 on the sale. On November 26, 1971, the trial court set aside the April 11, 1968, conveyance of the Island County property from Walter to Ethel Nielson as fraudulent.

The trial court concluded that Ethel Nielson was barred by res judicata from raising the affirmative defense that Horace Davis had purchased the paint store property

(which was security for the note) for the inadequate consideration of $500 and then resold the property since that defense could have been raised in the April 1, 1970, action on the note.

The assignments of error challenge the entry of the finding of fact that said:

> On April 11, 1968, at the time the defendant, Walter J. Nielson, conveyed his interest in the Island County real property to the defendant, Ethel Nielson, the defendant, Walter J. Nielson had the following liabilities:
> Instalment note dated June 26, 1953, payable to the order of Vic Dumas in the amount of $1,500.00;
> Instalment note dated October 20, 1953 ......$4,100.00
> Instalment note dated March 28, 1960 ........$1,000.00
> with unpaid balance of principal and interest in the approximate amount of $13,000.00 (See Finding of Fact No. IX).
> Total liabilities ..........................$13,000.00

The trial court's conclusion that the conveyance made by Walter Nielson to Ethel Nielson on April 11, 1968, was without fair consideration and rendered him insolvent is challenged as is the conclusion that res judicata precluded Ethel Nielson from asserting an affirmative defense that Davis sold the security for the promissory note and realized more than was owing him. Finally, the entry of the judgment setting aside the conveyance of Walter Nielson to Ethel Nielson by the quitclaim dated April 11, 1968, is likewise challenged.

To better understand the factual situation and in order that we may refer to specific findings to achieve clarity, we will set forth certain of the court's findings verbatim or in part:

### III

> On February 12, 1964, the defendant, Walter J. Nielson, as promissor executed a promissory note in the amount of $5,000.00 payable on demand to the order of the plaintiff, the consideration for which was the plaintiff's having cosigned the aforesaid note to the Commercial Bank of Seattle. Demand for payment of this note had been made by Plaintiff prior to the present action.

## V

On April 5, 1966, the defendants were divorced in King County, Washington, in which Decree of Divorce the defendant, Walter J. Nielson, was awarded as his sole and separate property the King County real property on which he conducted his retail paint store subject to the $5,000.00 note obligation payable to Plaintiff and in which Decree the Island County real property was equally divided between the parties.

## VI

On April 11, 1968, the defendant, Walter J. Nielson, conveyed to the defendant, Ethel Nielson, by quit claim deed his interest in the Island County real property for a stated consideration of $10.00 together with an oral promise of the grantee (Ethel Nielson) to assume and pay certain attorney's fees and costs advanced owing by grantor (Walter J. Nielson) to the plaintiff, which said indebtedness was evidenced by a mortgage in the amount of $4,200.69 from Defendant Walter J. Nielson to the plaintiff on said Island County property, dated July 27, 1966, . . .

## VII

On April 11, 1968, the interest of Defendant Walter J. Nielson in the Island County real property referred to in Finding No. VI had an evaluation of between $20,000.00 and $30,000.00.

## VIII

On April 14, 1968, the defendants, Walter J. Nielson and Ethel Nielson, were remarried, and said parties had planned said remarriage at the time of the conveyance set forth in Finding No. VI.

## XI

On November 19, 1969, Defendant Walter J. Nielson conveyed to the plaintiff, Horace H. Davis, by quit claim deed his interest and after-acquired title to the King County property on which the retail paint store was located with the following statement appearing on the face of said quit claim deed:

"This deed is for good and valuable consideration and is neither given nor received with the intention of merging with this instrument that deed and assignment of real estate contract dated July 7, 1967, given as security, nor of waiving any of the assignee's rights thereunder."

While on the face of said quit claim deed there is reflected that no sales tax was due the Treasurer of King County, the plaintiff credited the defendant, Walter J. Nielson, $500.00 on the promissory note referred to in Finding of Fact No. III. The defendant, Ethel Nielson, did not join in the execution of this quit claim deed and had no knowledge of the transaction.

### XVI

On or about May 4, 1970, the plaintiff sold on his own behalf without payment of any real estate commission the real property acquired from Defendant Walter J. Nielson as set forth in Finding of Fact No. XI for $21,615.04, from which the plaintiff was paid $7,360.56 net.

### XVII

Prior to this sale (Finding of Fact No. XVI), the plaintiff had paid with respect to said property $480.00 to the contract vendor after the latter had served Notice of Intention to Declare Forfeiture of said contract; $559.79 delinquent real estate taxes to King County Treasurer; and the January, February and March, 1970, contract payments in the amount of $360.00, together with an appraisal fee of $150.00 and a TransAmerica Title Insurance Co. Court Proceedings Certificate in the amount of $62.70.

Four major inquiries are raised by the appeal.

QUAERE: Is a "secured creditor" a creditor with rights under the Uniform Fraudulent Conveyance Act (RCW 19.40) and, if so, must such secured creditor prove injury in order to set aside a conveyance made without fair consideration?

■ A creditor, for the purposes of the Uniform Fraudulent Conveyance Act, is "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." RCW 19.40.010. The status of "creditor" is not lost because security has been taken for a debt, and a secured creditor is entitled to bring an action to set aside a fraudulent conveyance by his debtor. 37 C.J.S. *Fraudulent Conveyances* § 71 (1943); Annot., 116 A.L.R. 1048, 1056 (1938). The security holder may sue to set aside, as fraudulent, a conveyance of property not covered by the

security. *Lincoln Sav. & Loan Ass'n v. Mann,* 129 Neb. 26, 260 N.W. 559 (1935). It follows that a mortgagee is a "creditor," and a mortgagor a "debtor" within the definitions of the Uniform Fraudulent Conveyance Act in respect to the right to set aside as fraudulent a conveyance of property not secured by the mortgage. *Neubauer v. Cloutier,* 265 Minn. 539, 122 N.W.2d 623 (1963); *Johnson v. Lentini,* 66 N.J. Super. 398, 169 A.2d 208 (1961); *Marshall & Ilsley Bank v. Stepke,* 228 Wis. 39, 279 N.W. 625, 116 A.L.R. 1042 (1938). Thus, the secured creditor may proceed, as any other creditor whose claim has matured under RCW 19.40.090, to (a) set aside the conveyance or annul the obligation or (b) attach or levy upon the property conveyed.

The burden of proving fraud rests upon the party seeking to set aside a transaction alleged to be fraudulent; but when the consideration for the conveyance is shown to be grossly inadequate, the burden of proving his good faith is on the defendant. *Workman v. Bryce,* 50 Wn.2d 185, 310 P.2d 228 (1957).

However, prejudice to a plaintiff is essential to relief under the act. *Webb v. Webb,* 260 Ala. 426, 70 So. 2d 639 (1954); *Haskins v. Certified Escrow & Mortgage Co.,* 96 Cal. App. 2d 688, 216 P.2d 90 (1950). The creditor must show injury from the conveyance before a complaint is appropriate. *Bank of Sun Prairie v. Hovig,* 218 F. Supp. 769 (W.D. Ark. 1963); *Bentley Brahman Ranch, Inc. v. City Nat'l Bank,* 202 So. 2d 863 (Fla. App. 1967); *Loe v. Downing,* 325 S.W.2d 479 (Mo. 1959).

We are unable to tell whether the conveyance from husband to wife did injure the plaintiff by depriving him of a reachable asset from which to satisfy a deficiency or whether the debts owed by the husband to the plaintiff (which appear to include both the debt owed on the promissory note and attorney's fees—findings of fact Nos. 3, 5, 6, and 11) were satisfied in full by the sale of property and payment of funds (finding of fact No. 16). This issue is intertwined with the issue we turn to next. The resolution

of both will require the further attention of the trial court.

QUAERE: Was the defendant-wife precluded from raising the defense of satisfaction of the debt on the basis of res judicata?

█ The defendant-wife, Mrs. Nielson, was not barred from raising as a defense any satisfaction of the debt to the plaintiff by the purchase and resale of the paint store property in spite of the recitation on the deed. The default judgment against the defendant-wife had been set aside, and the cause of action in the first case on the promissory note dismissed with prejudice without her involvement in the resolution of any issue on the merits. The doctrine of res judicata operates as a bar to an entire cause of action. If the actions in question sufficiently reflect identities of subject matter, cause of action, persons and quality of parties to call for an application of the doctrine, a second suit should be disallowed in its entirety. However, where a party to a second suit was not a party to the judgment entered in the first suit, res judicata does not apply. *Owens v. Kuro*, 56 Wn.2d 564, 354 P.2d 696 (1960).

Res judicata is an affirmative defense to be asserted by a defendant to a later action. *Meder v. CCME Corp.*, 7 Wn. App. 801, 502 P.2d 1252 (1972); CR 8(c). The doctrine does not bar the defendant-wife from raising the defense of satisfaction in this later action.

If res judicata does not bar raising the defense of satisfaction, is it precluded by the sister doctrine of collateral estoppel?

The distinction between res judicata and collateral estoppel is important. In *Bordeaux v. Ingersoll Rand Co.*, 71 Wn.2d 392, 395, 429 P.2d 207 (1967), the court noted:

> Res judicata and collateral estoppel, kindred doctrines designed to prevent relitigation of already determined causes and curtail multiplicity of actions and harassment in the courts, are at times indistinguishable and frequently interchangeable. If the differences must be noted, it could be said that res judicata is the more comprehensive doctrine, identifying a prior judgment arising out of the same cause of action between the same parties,

whereas a collateral estoppel relates to and bars relitigation on a particular issue or determinative fact. Both doctrines require a large measure of identity as to parties, issues and facts, and in neither can the party urging the two doctrines as a defense be a stranger to the prior proceeding. He must have been a party, a participant, or in privity with either, and the action out of which the bar is claimed must be qualitatively the same as the case in which the doctrine is set up as a bar. *Where res judicata precludes relitigation of an entire cause because of an identity of parties and issues culminating in a judgment, collateral estoppel is less inclusive, preventing retrial of but one or more of the crucial issues or determinative facts. Owens v. Kuro,* 56 Wn.2d 564, 354 P.2d 696 (1960); *Riblet v. Ideal Cement Co.,* 54 Wn.2d 779, 345 P.2d 173 (1959); 2 Orland, Wash. Prac. § 387 (2d ed., 1965).

(Italics ours.) *See also Luisi Truck Lines, Inc. v. Washington Util. & Transp. Comm'n,* 72 Wn.2d 887, 435 P.2d 654 (1967); *Meder v. CCME Corp., supra.*

*Symington v. Hudson,* 40 Wn.2d 331, 243 P.2d 484 (1952), held that a cause of action to quiet title was precluded because the issues raised by the pleadings could have been raised in a prior suit to quiet title between the same parties. The parties were the same; the subject matter and the issues were the same; and the primary difference in the two causes of action was that the roles of plaintiff and defendant were switched. The court held that the two actions were substantially identical. There, the doctrine was correctly applied to bar the bringing of an entire cause of action by a plaintiff. Here there was no need to make all of the defenses possible since the action involving the wife was dismissed with prejudice before the stage at which affirmative defenses would be pleaded and resolved.

*Lucas v. Velikanje,* 2 Wn. App. 888, 894, 471 P.2d 103 (1970), discussed the problem in a manner applicable to the instant inquiry as follows:

Before the doctrine of collateral estoppel can be applied, affirmative answers must be given to the following questions: (1) Was the issue decided in the prior adjudi-

cation identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? (4) Will the application of the doctrine not work an injustice on the party against whom the doctrine is to be applied?

Collateral estoppel applies only to issues which were actually decided in prior litigation and does not operate as a bar to matters which could have then been raised but were not.

Retatement of Judgments § 68, comments *d* and *e* at 300 (1942), state in part:

> d. *Facts not litigated.* A judgment on one cause of action is not conclusive in a subsequent action based upon a different cause of action as to questions of fact which might have been but were not litigated and determined in the prior action. The failure of the defendant to interpose a defense in the prior action which resulted in a judgment against him precludes him, it is true, from relying upon that defense thereafter in so far as the same cause of action is concerned. As to that cause of action the judgment is conclusive as to all defenses which the defendant interposed or might have interposed (see § 47). The result is different, however, as to the effect of the judgment upon other causes of action. *The defendant is not precluded from interposing a defense to the subsequent action which he might have interposed but did not interpose in the first action.*
>
> . . .
>
> e. *Failure to interpose affirmative defense.* If in the original action the defendant might have interposed an affirmative defense but failed to do so and judgment was given against him, he cannot collaterally attack the judgment by showing that he had a defense to the action. *But in a subsequent proceeding based on a different cause of action he can interpose the defense. The facts constituting the defense were not litigated and determined in the prior action.*

(Italics ours.)

■ Washington has recognized that the doctrine applies only to issues actually litigated in previous actions.

It is axiomatic that for collateral estoppel by judgment to be applicable, that the facts or issues claimed to be conclusive on the parties in the second action *were actually and necessarily litigated* and determined in the prior action.

(Italics ours.) *Henderson v. Bardahl Int'l Corp.*, 72 Wn.2d 109, 118, 431 P.2d 961 (1967); *Gibson v. Northern Pac. Beneficial Ass'n Hosps., Inc.*, 3 Wn. App. 214, 219, 473 P.2d 440 (1970). *See also Evergreens v. Nunan*, 141 F.2d 927, 152 A.L.R. 1187 (2d Cir. 1944); *Ira v. Columbia Food Co.*, 226 Ore. 566, 360 P.2d 622, 86 A.L.R.2d 1378 (1961).

If there is uncertainty as to whether a matter was previously litigated, collateral estoppel is inappropriate.

And, where, because of the ambiguity or indefiniteness of the verdict or judgment, the appellate court cannot say that the issue was determined in the prior action, collateral estoppel will not be applied as to that issue.

(Footnote omitted.) 2 L. Orland, Wash. Prac. § 368 (3d ed. 1972).

The defendant-wife was not collaterally estopped from raising the defense in this case.

The purpose of collateral estoppel by judgment is to preclude parties or their privies from relitigating an issue that has been finally determined by a court of competent jurisdiction after the party against whom the estoppel is claimed has had the opportunity to fairly and fully present his case.

*Henderson v. Bardahl Int'l Corp.*, *supra* at 115. *See also Gibson v. Northern Pac. Beneficial Ass'n Hosps., Inc.*, *supra*. The defense may be raised in this action.

Plaintiff contends that if the defendants were allowed to assert the defense the facts would show the defense to be without merit. However, no findings or conclusions of law were entered concerning whether the security interest in the property merged into the deed of conveyance when the plaintiff purchased the property or whether the plaintiff applied the proceeds from the sale to the debt. This also is for the further consideration of the trial court.

QUAERE: Were promissory notes of the defendant-debtor to an estate that were (a) not reduced to judgment and (b) subject to the defense of the statute of limitations properly included in the liabilities of the defendant in establishing insolvency?

It is contended that the court erred in considering debts owed by the defendant-husband Nielson to an estate in determining that the conveyance rendered him insolvent. At the time of the allegedly fraudulent conveyance, the debts were evidenced by promissory notes upon which no suit had been initiated. Following the conveyance, a default judgment upon the notes was entered against Nielson. He argues that on the date of the allegedly fraudulent conveyance, the debts were speculative in that recovery on the notes appeared to be barred by the statute of limitations.

■■ A "debt" within the context of the Uniform Fraudulent Conveyance Act "includes any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." RCW 19.40.010. A person is "insolvent" when "the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." RCW 19.40.020. An existing claim against a debtor is to be considered in ascertaining whether the debtor was insolvent at the time of the conveyance, whether such claim was reduced to judgment or not. *Menconi v. Davison*, 80 Ill. App. 2d 1, 225 N.E.2d 139 (1967); *Gager v. Pittsford Dev. Corp.*, 6 Misc. 2d 873, 164 N.Y.S.2d 324 (1957); RCW 19.40.010.

A conveyance may be fraudulent as against an unliquidated claim for damages or an existing right of action upon a contingent claim. *Petrovitsky v. Smith*, 86 Wash. 151, 149 P. 641 (1915).

The statute of limitations is an affirmative defense, not a bar to an action. *Boyle v. Clark*, 47 Wn.2d 418, 287 P.2d 1006 (1955). As a defense, it is waived where a defendant fails to appear or fails to interpose it as a defense. *State ex*

*rel. Teeter v. Superior Court,* 110 Wash. 255, 188 P. 391 (1920).

Until suit on the notes was initiated, the statute of limitations had no impact. The debts on the notes to the estate were properly considered in determining whether the defendant-husband became insolvent by the conveyance.

QUAERE: Was the conveyance from the defendant-husband to the defendant-wife made without "fair consideration" being made for the assumption of two mortgage indebtednesses totaling nearly $5,000?

■ The trial court concluded that the conveyance from Walter to Ethel Nielson was without fair consideration. Fair consideration within the context of fraudulent conveyance issues is defined in RCW 19.40.030:

> Fair consideration is given for property, or obligation,
> (1) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied,
> . . .

The assumption of debts of approximately $5,000 in return for the transfer of property of a value of $20,000 to $30,000 is not a fair equivalent. *Columbia Int'l Corp. v. Perry,* 54 Wn.2d 876, 344 P.2d 509 (1959); *Osawa v. Onishi,* 33 Wn.2d 546, 206 P.2d 498 (1949); *Schanno v. Pangle,* 19 Wn.2d 539, 143 P.2d 540 (1943).

■ It is also contended that the conveyance was made in anticipation of the marriage of the parties and was, therefore, supported by adequate consideration. The trial court found that the parties had planned their remarriage at the time of the conveyance. Although it has been held that marriage or a promise to marry is adequate consideration, *Armstrong v. Armstrong,* 100 Wash. 270, 170 P. 587 (1918), *Prignon v. Daussat,* 4 Wash. 199, 29 P. 1046, 31 Am. St. R. 914 (1892), 37 C.J.S. *Fraudulent Conveyances* § 156 (1943), there is no testimony in the record that the conveyance was made in consideration of a promise to marry. The trial court in its finding does not state that the remarriage was to be accomplished in return for the conveyance. Mar-

878

riage as a consideration must be bargained for and exchanged in return for that received. *Snyder v. Roberts,* 45 Wn.2d 865, 278 P.2d 348, 52 A.L.R.2d 631 (1955); 1 A. Corbin, *Contracts* § 134 (1963); Restatement of Contracts § 75 (1932).

The cause is remanded to the trial court to permit the defendant-wife to interpose the defense of satisfaction of the debt and for further proceedings consistent with this opinion.

HOROWITZ, J., concurs.

WILLIAMS, J., concurs in the result.